CHURCH E. GATES & COMPANY, Respondent, *v.* JOHN F.
STEVENS CONSTRUCTION COMPANY, et al., Defendants,
and A. P. DIENST COMPANY, INCORPORATED, et al.,
Respondents, Consolidated with
CENTRAL UNION GAS COMPANY, Respondent, *v.* LYTTLE-
TON FOX, as Trustee in Bankruptcy of JOHN F.
STEVENS CONSTRUCTION COMPANY, Appellant, Impleaded
with Others.

Lien Law — mechanics' liens — lien may be filed for labor and
materials which enter into and become part of a public improve-
ment or are necessarily used in the performance of a contract for its
construction or improvement — Bankruptcy Law — does not affect
right of lienors under the statutes of this state — when company
furnishing materials to contractor constructing public improve-
ment, who becomes bankrupt, entitled to lien for such materials
though not actually delivered before bankruptcy of contractor.

1. The construction of a subway in the city of New York is a
public improvement and the labor or materials that enter into and
become a part of the improvement, or are necessarily and exclu-
sively used, not as tools and equipment, but in the performance of a
particular contract with reference to the subway are labor and
materials within the meaning of the statute for which a lien may
be filed. (Lien Law, § 2; Cons. Laws, ch. 33.)

2. It was not the intention of the Bankruptcy Law to invest a
trustee in bankruptcy with any greater or broader rights than the
bankrupt himself held or to affect any lien, inchoate or otherwise,
which was effective against the bankrupt. The amendment of the
Bankruptcy Law in 1910, section 47a (2), enlarging the rights and
powers of a trustee in bankruptcy, was not intended to enlarge the
rights of a trustee as against lienors under our statute but to
enable the trustee to avoid secret and unrecorded liens created by
the act of the bankrupt. Hence the contractor's trustee in bank-
ruptcy takes his title subject to liens filed by laborers, mechanics,
materialmen or subcontractors subsequent to the assignment but
within the time prescribed by statute.

3. A contract between a construction company, which had a con-
tract with the city of New York for the construction of part of a
subway, and a manufacturing company, for furnishing structural

steel work, provided that the steel should be delivered within the free lighterage limits of the city of New York. The manufacturing company had actually performed its contract with the construction company before the latter was adjudged a bankrupt, although steel of a value equal to the balance due had not, at the time of the bankruptcy of the construction company, been actually delivered within the state of New York, though accepted by the construction company, but was temporarily stored in the state of New Jersey for the convenience of the construction company, pursuant to a supplementary agreement regarding its delivery, by which it was agreed and understood that the material so stored would be considered as completely delivered under the contract and payments made accordingly. The steel so furnished was afterward sold by the trustee in bankruptcy to the assignee and successor of the construction company, and has been actually used in carrying out the contract for the construction of the subway. *Held*, that the fact that the steel was temporarily stored in the state of New Jersey at the time of the bankruptcy of the construction company does not, under the circumstances disclosed, prevent the enforcement of the lien of the company furnishing the steel.

*Gates & Co.* v. *Stevens Construction Co.*, 169 App. Div. 221, affirmed.

(Argued December 13, 1916; decided January 9, 1917.)

APPEAL from so much of a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered September 30, 1915, as affirmed a judgment in favor of lienors, entered upon a decision of the court on trial at Special Term in actions to foreclose mechanics' liens, consolidated pursuant to the Lien Law.

The facts, so far as material, are stated in the opinion.

*Isham Henderson* for appellant. The steel of the American Bridge Company having been sold and delivered within the state of New Jersey was not "furnished" under the Lien Law, and the bridge company's lien cannot be sustained. (*B. I. F. Co.* v. *G. C. S. Mfg. Co.*, 78 N. Y. 30; *Campbell* v. *Coon*, 149 N. Y. 556.) The lumber and other supplies purchased by the contractor which were not and were not intended to be incorporated in and

did not become a part of the permanent improvement were not "materials" under the Lien Law. (*People* v. *Crane,* 214 N. Y. 154; *Schaghticoke* v. *G. & J. Ry. Co.,* 183 N. Y. 306; *Troy Public Works* v. *Yonkers,* 207 N. Y. 81; *Shultz* v. *Quereau Co,,* 210 N. Y. 257; *Giant Powder Co.* v. *O. P. Ry. Co.,* 42 Fed. Rep. 470; *Cowen* v. *Paddock,* 137 N. Y. 188; *Spruck* v. *McRoberts,* 139 N. Y. 193; *Hankinson* v. *Vantine,* 152 N. Y. 20; *De Klyn* v. *Gould,* 165 N. Y. 282.) The trustee in bankruptcy of the Jno. F. Stevens Construction Company under the Bankruptcy Act of 1898, as amended, acquired a valid lien on the fund in this action which was superior to the mechanics' liens sought to be foreclosed. (*Hildreth Granite Co.* v. *City of Watervliet,* 161 App. Div. 420.)

*Arthur Knox, Percy F. Griffin* and *Berthold Schmidt* for Church E. Gates & Co. et al., respondents. The materials furnished by the lumber lienors formed the basis for valid liens under section 5 of the Lien Law and the lumber lienors acquired valid liens thereunder. (*Schaghticoke Powder Co.* v. *G. & J. Railway Co.,* 183 N. Y. 306; *Troy Public Works Co.* v. *City of Yonkers,* 207 N. Y. 81; *Shultz* v. *Quereau Co.,* 210 N. Y. 257; *Sears* v. *Wise,* 52 App. Div. 118; *Griffin* v. *Ernst,* 124 App. Div. 289; *Dicks* v. *La Farge,* 1 E. D. Smith, 722; *Post & McCord* v. *City of New York,* 86 Misc. Rep. 300; *Chicago Lumber Co.* v. *Douglas,* 89 Kan. 308; *Darlington Lumber Co.* v. *Westlake Co.,* 141 S. W. Rep. 931; *Avery & Son* v. *Woodruff,* 144 Ky. 227.) The trustee acquired no prior rights in the fund on deposit by reason of the fact that the notices of lien were filed subsequently to the adjudication in bankruptcy. (*Hildreth Granite Co* v. *City of Watervliet,* 161 App. Div. 420; *York Mfg. Co.* v. *Cassell,* 201 U. S. 344; 3 Remington on Bankruptcy, 331; Collier on Bankruptcy [8th ed.] 541, 542; *Matter of Williamsburg Knitting Mills,* 27 Am. Bank. Rep. 178; *Brandt* v. *Mayhew,* 33 Am. Bank.

Rep. 851; *Matter of Cooper*, 35 Am. Bank. Rep. 321; *Kane Co.* v. *Kinney*, 174 N. Y. 72; *Matter of Emsley*, 102 Fed. Rep. 292; *Walker* v. *Henry*, 85 N. Y. 134; *Stonebridge* v. *Perkins*, 141 N. Y. 5.)

*William W. Corlett* and *Raynal C. Bolling* for American Bridge Company, respondent. The steel furnished by the American Bridge Company of New York was " materials furnished " within the meaning of the Lien Law, for it was delivered in the state of New York pursuant to a contract providing for such delivery and for a public improvement. (*Campbell* v. *Coon*, 149 N. Y. 556; *B. I. F. Co.* v. *G. S. Mfg. Co.*, 78 N. Y. 30.) The trustee in bankruptcy did not, under the Bankruptcy Act of 1898 as amended, acquire a lien upon the moneys in the control of the city of New York superior to the mechanic's lien of American Bridge Company of New York. (*Hildreth Granite Co.* v. *City of Watervliet*, 161 App. Div. 420.)

*John A. Garver, Richard W. Smith* and *H. E. Almberg* for Central Union Gas Company, respondent. The materials furnished by the respondent were a proper subject of lien. (*Schaghticoke Powder Co.* v. *G. & J. Ry. Co.*, 183 N. Y. 306; *Troy Public Works* v. *City of Yonkers*, 207 N. Y. 81; *Shultz* v. *Quereau Co.*, 210 N. Y. 257; *Barker & Stewart Lumber Co.* v. *Marathon Paper Mills*, 146 Wis. 12; *Chicago Lumber Co.* v. *Douglas*, 89 Kan. 308; *Post & McCord* v. *City of N. Y.*, 86 Misc. Rep. 300.) The lien of the respondent is superior to that of the trustee in bankruptcy. (*Hildreth Granite Co.* v. *City of Watervliet*, 161 App. Div. 420; *Kane Co.* v. *Kinney*, 174 N. Y. 69; *Henderson* v. *Mayer*, 225 U. S. 631.)

*William Wallace Young* for E. I. Du Pont De Nemours Powder Company, respondent. The amendment was not intended to change the previously well-settled law to the effect that the right to perfect the inchoate right of

mechanic's lien was not barred by the filing of a voluntary petition in bankruptcy. (*Kane Co.* v. *Kinney*, 174 N. Y. 72; *H. B. Works* v. *Booth*, 35 App. Div. 624; 161 N. Y. 658; *Matter of Emsley*, 102 Fed. Rep. 292; *Crane* v. *P. S. Co.*, 94 App. Div. 53; *Matter of Lane Lumber Co.*, 217 Fed. Rep. 550; *M. L. Co.* v. *Johnson*, 33 Am. Bank. Rep. 717; *Henderson* v. *Mayer*, 225 U. S. 637.) The principal purpose of the amendment of 1910 was to avoid secret liens on property in the possession of the bankrupt, and to make the Federal law governing rights of trustees to avoid liens the same as that of the states as applied to the respective rights of lien creditors and receivers or assignees for the benefit of creditors. (*York Mfg. Co.* v. *Cassell*, 201 U. S. 344; *Sparks* v. *Weatherly*, 58 So. Rep. 280; *Matter of Superior D. F. & Mfg. Co.*, 208 Fed. Rep. 813.) The trustee in bankruptcy, as to the money in the possession of the city of New York, against which the lien in this case was filed, has only the rights of a judgment creditor holding an execution returned unsatisfied, and has no lien upon these funds. (*Walker* v. *Henry*, 85 N. Y. 134; *Watrous* v. *Lathrop*, 4 Sandf. 700; *Roth* v. *Wells*, 29 N. Y. 489.)

*Henry B. Corey* for Atlas Portland Cement Company, respondent. The filing of a mechanic's or municipal lien creates a claim in favor of the lienor superior to the title of the trustee in bankruptcy. (*Hildreth Granite Co.* v. *City of Watervliet*, 161 App. Div. 420.)

*Leon Lauterstein* for Cross, Austin & Ireland Lumber Company, respondent. The lumber and timber furnished by Cross, Austin & Ireland Lumber Company to Jno. F. Stevens Construction Company, the general contractor, for the construction of the public improvement, entitled it to a lien for the agreed price of the materials. (*S. P. Co.* v. *G. & J. Ry. Co.*, 183 N. Y. 306.) The amendment of 1910 to section 47 of the Bankruptcy Act did not

deprive the lienors of their right to file liens within the time allowed by section 12 of the Lien Law. (*Hildreth Granite Co.* v. *City of Watervliet,* 161 App. Div. 420; 2 Remington on Bankruptcy [2d ed.], §§ 1154, 1255.)

*C. W. Wilson. Jr.,* for William E. Paine et al., as trustees of Yellow Pine Company, respondents. The lumber and timber furnished by these defendants were required by and were necessary for the performance of this subway contract and were actually used in the construction of this public improvement, and the said lumber and timber are, therefore, "materials" within the meaning of the Mechanics' Lien Law. (L. 1909, ch. 38, § 5; *Schaghticoke Powder Co.* v. *Greenwich & Johnsonville R. Co.,* 183 N. Y. 306; *Post & McCord* v. *City of New York,* 86 Misc. Rep. 300; 166 App. Div. 919; *Barker & Stewart Lumber Co.* v. *Marathon Paper Mills Co.,* 146 Wis. 12; *Troy Public Works Co.* v. *City of Yonkers,* 207 N. Y. 81; *Shultz* v. *Quereau Co.,* 210 N. Y. 257; *G. P. Co.* v. *O. P. R. R. Co.,* 42 Fed. Rep. 470; *McManus* v. *McManus,* 179 N. Y. 338.) A mechanic's lien for the value of materials furnished under a contract, although filed after the adjudication in bankruptcy of the contractor, but within the time required by the Lien Law, takes precedence over the lien of the trustee in bankruptcy on the amount due under such contract. (*Hildreth Granite Co.* v. *Citg of Watervliet,* 161 App. Div. 420; *York Mfg. Co.* v. *Cassell,* 201 U. S. 344.)

*Harry N. Wessel.* for A. P. Dienst Company, Inc., respondent. The materials furnished by the Dienst Company formed the basis for a valid lien under section 5 of the Lien Law. (*B. & S. Lumber Co.* v. *Marathon Paper Co.,* 146 Wis. 12; *Post & McCord* v. *City of New York,* 166 App. Div. 919; 86 Misc. Rep. 300; *S. P. Co.* v. *G. & J. Ry. Co.,* 183 N. Y. 306; *Troy Pub. Works* v. *City of Yonkers,* 207 N. Y. 81; *Shultz* v. *Quereau Co.,*

210 N. Y. 257; *G. P. Co.* v. *O. P. R. Co.*, 42 Fed. Rep. 470; *R. C. Co.* v. *G. & N. Ry. Co.*, 59 Mo. App. 7.)

*Lamont McLaughlin* for Rheinfrank Building Material Company, respondent. The steel beams known as "I" beams, furnished by the Rheinfrank Company, were "material" under the Lien Law. (*Schaghticoke Powder Co.* v. *Greenwich Ry. Co.*, 183 N. Y. 306; *Post & McCord* v. *City of New York*, 86 Misc. Rep. 300; *Chicago Lumber Co.* v. *Douglas*, 131 Penn. St. 563; 89 Kan. 308; *Darlington Lumber Co.* v. *Westlake Co.*, 141 S. W. Rep. 931; *Avery & Son* v. *Woodruff*, 144 Ky. 227; *Barker & Stewart Lumber Co.* v. *Marathon Paper Mills Co.*, 130 N. W. Rep. 866.) The lumber furnished was also "material" under the Lien Law. (*S. P. Co.* v. *G. Ry. Co.*, 183 N. Y. 306.) The Rheinfrank Company lien is superior to any right or claim of Lyttleton Fox, as trustee in bankruptcy of the Stevens Company. (*H. G. Co.* v. *City of Watervliet*, 161 App. Div. 420.)

*Alvin C. Cass* for Clermont Sewer Pipe Company et al., respondents.

*C. E. Thornall* for Harry C. Trexler et al., trading under the name of Trexler Lumber Company, respondents.

CHASE, J. The Jno. F. Stevens Construction Company in 1912 entered into a contract with the city of New York for the construction of a part of the subway known as the Southern Boulevard and Westchester Avenue Rapid Transit Railroad. It proceeded with the performance of its contract; but on August 11, 1913, before completing the same, filed in the District Court of the United States for the Southern District of New York, a voluntary petition in bankruptcy. It was on that day adjudged a bankrupt, and receivers were appointed. The appellant was subsequently elected and qualified as trus-

tee. At the time when it was adjudged a bankrupt the company had so far completed its contract as to be entitled to a payment from the city of New York of $56,504.59. Subsequent to the adjudication in bankruptcy several mechanics' liens were filed. By an agreement between the lienors and the trustee the liens were canceled and the $56,504.59 was paid to the trustee under an agreement in regard to continuing the liens upon the money so transferred to the trustee, the details of which it is not necessary to specify for the purposes of this opinion. As provided by the agreement the amount so paid over to the trustee or a large part thereof awaits the result of the actions to foreclose the liens. The facts affecting the several liens are stated quite fully in the opinion of the Appellate Division (*Gates & Co.* v. *Stevens Construction Co.*, 169 App. Div. 221), and so far as there stated will not be repeated in this opinion. The trustee in bankruptcy is the only appellant. He urges but three reasons why the judgment should be reversed. As stated by him, they are in substance as follows:

1. That the lien of the American Bridge Company was improperly sustained for steel sold and delivered within the state of New Jersey and not "furnished" within the meaning of the Lien Law.

2. That the lumber and other supplies purchased by the contractor and which were not actually incorporated into and became a part of the permanent improvement, were not "materials" within the meaning of the Lien Law.

3. That the liens having all been filed after the filing of the petition in bankruptcy, were subject to the prior lien acquired by the trustee in the bankruptcy proceeding.

The contract made between the construction company and the American Bridge Company for furnishing structural steel provided that the steel should be delivered to the construction company "f. o. b. New York City within free lighterage limits." The bridge company actually performed its contract with the construction

company. The only objection to sustaining the lien filed by it for the amount unpaid on its contract at the time of the bankruptcy of the construction company is that steel of a value equal to the balance then remaining due to it had not at that time been actually delivered within the state of New York. At the time of the bankruptcy the steel in question was stored in Greenville, N. J., pursuant to a supplementary arrangement in regard to its delivery as shown by the final letter in a correspondence between the construction company and the bridge company from which we quote: "You say in your letter that it is understood that material stored at Greenville will be considered as completely delivered under your contracts and payments made accordingly. I presume you mean by this the receipt of the material, but that it is also understood in accordance with our contract that this material is really not delivered to us until we take it at some dock on the East River or the Harlem River within free lighterage limits."

The trial court found "That said delivery to said Jno. F. Stevens Construction Company was a temporary delivery and at the request and for the convenience of said construction company and that thereafter and prior to the 20th day of October, 1914, said material was delivered by the defendant American Bridge Company of New York at the city of New York to the Richard Carvel Company, successor in interest to said Jno. F. Stevens Construction Company."

It is not disputed that the structural steel so furnished by the bridge company was actually sold by the trustee in bankruptcy to the Richard Carvel Company, Inc., in connection with an assignment of the contract of the construction company with the city of New York to said Carvel Company and has actually been used in carrying out said contract with the city of New York. The contract with the bridge company was made in the state of New York, by New York corporations for steel to be fur-

nished and which was actually furnished in this state. The fact that the steel although conditionally accepted by the construction company was temporarily stored in the state of New Jersey at the time of the bankruptcy does not under the circumstances disclosed prevent the enforcement of the lien.

The statute (Lien Law, Cons. Laws, ch. 33, section 5) provides: " A person performing labor for or furnishing materials to a contractor   *   *   *   for the construction of a public improvement pursuant to a contract by such contractor with the state or municipal corporation, shall have a lien for the principal and interest of the value or agreed price of such labor or material upon the moneys of the state or such corporation applicable to the construction of such improvement, to the extent of the amount due or to become due upon such contract, upon filing a notice of lien as prescribed in this article."

An " improvement " is defined (Lien Law, section 2) as including " the erection, alteration or repair of any structure upon, connected with, or beneath the surface of, any real property and any work done upon such property, or materials furnished for its permanent improvement."

A " public improvement " is defined as meaning " An improvement upon any real property belonging to the state or municipal corporation." The contract of the Stevens Company with the city of New York for the construction of a part of a rapid transit railroad with its appurtenances included a provision as follows: " It will be necessary to take up and relay the sidewalk pavement or other surface material, and to lay and maintain a temporary pavement in the roadways, to protect, support and maintain during construction all buildings and other structures, including their foundations, and all surface, sub-surface and elevated railroads, water mains, gas pipes, electric subways, poles and wires, vaults, including vaults of abutting property, and other surface, sub-surface and overhead structures, together with their neces-

sary connections, as the same may be met with along the route; to build sewers both along the route and other streets; to make or remake the necessary manholes, catch basins and other sewer connections therewith; to move, alter, readjust or rebuild water mains, gas pipes, electric subways, vaults, including vaults of abutting property, and other sub-surface structures, together with their necessary connections; and to do all such additional and incidental work as may be necessary for the completion of the Railroad and the reconstruction and restoration of the street pavements or other surfaces (except as herein provided in respect of temporary pavements for roadways) adjacent to the route of the Railroad and which may have been directly or indirectly disturbed or injured by the Contractor in the progress of the work of construction, to as useful and good a condition as existed before construction shall have been begun. All such work of every description including underpinning wherever necessary of all buildings or structures of whatsoever nature, monuments and surface, sub-surface and elevated railroads affected by or interfered with during the construction of the Railroad, is part of the work which is included in this contract and which the Contractor agrees to perform for the prices herein agreed upon."

. The contract provided for payment of the construction company by unit prices and such prices include the work and material for maintaining a temporary pavement in the public streets and the protection and maintenance for public use of water mains, gas pipes, electric subways, poles, wires, vaults, etc., for all of which special provision in detail is included in the contract with the city of New York. The maintenance of the temporary pavements, mains, pipes, wires, vaults, etc., are public improvements within the contract made by the construction company with the city as much as the rapid transit railroad which is the ultimate end and purpose of the con-

tract.    If a contractor had taken a contract for the main
tenance of the surface of the street for public travel, and
the mains, pipes, wires, vaults, etc., for public use, and
another contractor had taken a contract to install the
rapid transit road after all the excavations and other
work had been made and performed, the employees of the
first contractor and those furnishing materials to him
would not have been deprived of all right to a lien for
labor and materials so furnished under his contract.

The words " permanent improvement," as used in sec-
tion 2 of the Lien Law, are intended to differentiate the
labor and materials which are consumed in or constitute
the public improvement as distinguished from the labor
or materials which enter into and become a part of the
plant of the contractor owned and used by him in the
performance of his work.

The labor and materials that enter into and become a
part of the improvement required by a contract or are
necessarily and exclusively used, not as tools and equip-
ment, but in the performance of the particular contract,
are labor and materials within the meaning of the statute.
(*Schaghticoke Powder Co.* v. *G. & J. R. Co.,* 183 N. Y.
306; *Troy Public Works Co.* v. *City of Yonkers,* 207
N. Y. 81; *Shultz* v. *Quereau Co.,* 210 N. Y. 257.)

We do not think that the Appellate Division erred in
sustaining the liens as stated by it in the judgment from
which this appeal is taken.

A general assignee for the benefit of creditors takes
his title subject to liens filed by laborers, mechanics,
material men or subcontractors subsequent to the
assignment but within the time prescribed by statute.
(*John P. Kane Co.* v. *Kinney,* 174 N. Y. 69.)

Judge HISCOCK, when a member of the Appellate
Division and writing for the court in *Crane Co.* v. *Pneu-
matic Signal Co.* (94 App. Div. 53, 56), said: " We do
not agree with the counsel   *   *   *   that the voluntary
proceedings by the bankrupts in this case were broader

4

and more effective as against the rights of the material man than was the general assignment in the *Kane* case, or that the trustee occupies any different or higher position than did the general assignee. We do not think that it was the intention of the provisions of the bankruptcy law in a case like this to invest the trustee in bankruptcy with any greater or broader rights than the bankrupt himself held or to affect any lien inchoate or otherwise which was effective against the bankrupts."

The Bankruptcy Law was amended in 1910, section 47a (2). As so amended it reads: "And such trustees as to all property in the custody or coming into the custody of the bankruptcy court shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also as to all property not in the custody of the bankruptcy court shall be deemed vested with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied."

The amendment of the Bankruptcy Law was not intended to enlarge the rights of a trustee as against lienors under our statute but to enable the trustee to avoid secret and unrecorded liens created by act of the bankrupt. (*Hildreth Granite Co.* v. *City of Watervliet*, 161 App. Div. 420; Remington on Bankruptcy [2d ed.], vol. 2, §§ 1255, 1154; Collier on Bankruptcy [8th ed.], 541, 542.)

The judgment of the Appellate Division should be affirmed, with costs.

HISCOCK, Ch. J., COLLIN, CUDDEBACK, HOGAN, CARDOZO and POUND, JJ., concur.

Judgment affirmed.