## ASH v. HONIG et al.
### No. 121.

Circuit Court of Appeals, Second Circuit.
Jan. 16, 1933.

David Kimmel, of Paterson, N. J., for Robert F. Ash.

Kimmel & Kimmel, of Paterson, N. J., for James A. Parr.

Leon M. Woodworth, of Brooklyn, N. Y., for Mountain View Brick Company.

John H. Mariano, of New York City, for impleaded defendant-appellee, Suffern National Bank & Trust Co.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Julius Honig, owner of a parcel of real estate at Suffern, N. Y., undertook the erection of a hotel on the plot in 1928. On November 28, Honig requested a loan of $4,000 from the Suffern National Bank & Trust Company. At the time, Honig owed the bank $5,000. He obtained the loan of $4,000, and executed a bond and mortgage dated November 30, 1928, for $15,000 on the premises as collateral security for these advances totaling $9,000. Honig's wife did not join in the mortgage until January 11, 1929, and it was not filed until January 12, 1929. In December, 1928, the bank made an additional advance of $1,900.

On December 17, 1928, Honig contracted with appellant Parr for the masonry work on the hotel, and a few days later contracted with Ash for the plumbing. After making the contracts, both Parr and Ash started to work on the building and continued until March, 1929, when they were apprised of the mortgage recorded on January 12, 1929. They then stopped work and filed notices of mechanics' liens under the New York State Lien Law (Consol. Laws N. Y. c. 33). Parr filed on March 9, 1929, and Ash on March 12, 1929. Honig's petition in bankruptcy was filed late in 1929, at which time he owed general creditors $35,739.08, and his assets, apart from the hotel building, consisted of the stock and fixtures in a confectionery store which were appraised at $465.68 and a home in Suffern, N. Y., upon which a mortgage was later foreclosed and purchased, leaving no equity therein.

The president of the bank testified that he took the mortgage for the purpose of security and that Honig promised he would later obtain a $40,000 mortgage and repay his indebtedness to the bank. When testifying, he was asked his reason for not recording the mortgage until January 12, 1929, and stated that the recording was deferred to save Honig recording fees, and that the mortgage was recorded on January 12th because the bank examiners were expected.

Parr contracted to do the masonry and steel work for $21,000 on December 17, 1928. He started delivering the material a day or two after the execution of the contract, and at that time he went to New City, the county seat of Rockland county, had the records examined, and found that there was no mortgage recorded against the property. Parr told Ash that there was no mortgage recorded against the property. After talking with Mr. Honig and receiving assurances from him that the bank was going to finance the operation until he got his permanent loan, both Ash and Parr went to the banking office to see the president of the bank, who was away on vacation, but they talked with the cashier, then in charge, and he stated that the plot was free and clear and that the bank was going to finance the operation, and upon

that. assurance both proceeded with their work. On January 12, 1929, they had erected the four walls and installed steel work and rough plumbing. The building was within a short distance of the bank, and the progress of the work was within easy view, and this gave knowledge to the bank officials.

It was not until March 3, 1929, that the appellants were advised of the existence and recordation of the mortgage, at which time they stopped work. They thereupon filed mechanics' liens against the property. Parr's lien was for $13,710.43, and Ash's lien was for $3,419.81.

After filing the liens, this suit was instituted to foreclose the same and to obtain a decree that their liens be determined to be prior to the bank's mortgage. The building was sold by a special master and netted $15,-000.

The New York statutes respecting mechanics' liens are applicable. N. Y. Lien Law (Consol. Laws N. Y. c. 33) § 3; In re Friedal Corp., 53 F.(2d) 758 (C. C. A. 2); N. Y.-Brooklyn Fuel Corp. v. Fuller, 11 F. (2d) 802 (C. C. A. 2). This case must be governed by the statutes in force in 1928 and 1929. By the law of that time (Lien Law, § 3), a mechanic's lien existed "from the time of filing a notice of such lien." A right to a lien has been recognized before the filing to protect persons who filed after a petition in bankruptcy or an assignment for creditors. Gates v. Stevens Construction Co., 220 N. Y. 38, 115 N. E. 22; Kane Co. v. Kinney, 174 N. Y. 69, 66 N. E. 619. But this right before filing cannot prevail over a mortgagee who records before a notice of lien is filed, unless the mortgage is fraudulent or the conduct of the mortgagee estops his assertion of a priority.

The court below found that the delay in recording the mortgage was not fraudulent. We think it unnecessary for the determination of this case to disturb that conclusion.

The question is presented, however, as to whether or not the assurances given by the cashier and the delay in recording the mortgage after the bank knew that Ash and Parr were about to contract, did not create an estoppel against the bank. The evidence of the conversation between Sheehan, the cashier of the bank, and the appellants Ash and Parr is in conflict, but it is satisfactorily shown by the appellants that Sheehan, representing the bank, stated that the property was free and clear, and that the bank was going to finance the operation, and that the appellants pro-

ceeded with their work after and upon the faith of that assurance.

In Trenton Banking Co. v. Duncan, 86 N. Y. 221, relied upon in the court below, a judgment creditor of a partnership claimed that a retired partner, who held title to the realty occupied by the firm under deeds which were not recorded, was estopped from asserting his title. In holding that there was no estoppel, the court said: "To authorize the finding of an estoppel in pais, against the legal owner of land, there must be shown, we think, either actual fraud, or fault or negligence, equivalent to fraud on his part, in concealing his title; or that he was silent when the circumstances would impel an honest man to speak; or such actual intervention on his part, as in Storrs v. Barker, as to render it just, that as between him and the party acting upon his suggestion, he should bear the loss."

Circumstances impelling an honest man to speak without proof of fraud are enough to create an estoppel here. Manton v. Brooklyn & Flatbush Realty Co., 217 N. Y. 284, 111 N. E. 819, 821. The failure to record the mortgage, coupled with the assurance that the bank was to finance the operation and that there was no mortgage against the property, created a situation which deceived these lienors in supplying materials and labor for the job from the time of such assurance until the date of knowledge of the mortgage. If the case of Trenton Banking Co. v. Duncan, supra, may be regarded as requiring proof of circumstances from which the inference of fraud arises in order to estop a legal title (Pomeroy, Equity Jurisprudence, §§ 805-807 [4th Ed. 1919]), we think that requirement has been modified by the same court's decisions in Manton v. Brooklyn & Flatbush Realty Co., supra. In the Trenton Case, the court stressed the fact that the judgment creditor had not searched the record title which would have shown that title was not in the partnership. The court said: "The plaintiff, we think, cannot call upon the court to apply the highly penal doctrine of equitable estoppel, when it omitted the most obvious and natural means of ascertaining the true state of the title."

But at bar the appellants did search the title. Moreover, a general creditor does not rely upon the debtor's title to specific realty to the extent one does in improving such realty, and the former is less likely to be injured by delay in recording. The grantee in the Trenton Case, unlike the mortgagee here, had no dealings with the lienor. At bar it is

undisputed that the improvements were made within the sight of the bankers and with what must have been certain knowledge on the part of the mortgagee. In these circumstances, the bank remained silent when it should have spoken. Failure to record the mortgage, together with the circumstance that the bank, on inquiry from the appellants, had full opportunity to disclose to them the true situation, is sufficient to create an equitable estoppel. The general rule, as expressed in Hungerford v. Earle, 2 Vern. 261, 23 Eng. Rep. 768, and by Chancellor Kent in Wendell v. Van Rensselaer, 1 Johns. Ch. (N. Y.) 344, should be applied here rather than the narrow formula applied to the peculiar facts of the Trenton Case. Blennerhasset v. Sherman, 105 U. S. 100, 26 L. Ed. 1080; Manders v. Wilson, 235 F. 878 (C. C. A. 9); Clayton v. Exchange Bank of Macon, 121 F. 630 (C. C. A. 5); In re Natl. Boat & Engine Co. (D. C.) 216 F. 208. Whatever may have been the intention of the bank regarding the mortgage, its use and recordation, the failure to record has actually practiced deceit, and the appellants remained unprotected while they improved the property on the assurance that the bank was financing the operation and that the property was free of indebtedness. As said in Manton v. Brooklyn & Flatbush Realty Co., supra: "The lienor who willfully or negligently keeps his lien off the docket 'knows or ought to know that some one is relying upon his silence and will be injured by that silence.'" Collier v. Miller, 137 N. Y. 332, 33 N. E. 374. There is the duty to speak, a duty to give notice, which, if violated, creates an estoppel. Prof. Glenn in his "Law of Fraudulent Conveyances" (1931) § 370, p. 498, states: "The principle is not new, as we have seen; it is just a modern method of doing what was done several centuries ago when the Chancery Court said that 'a deed not at first fraudulent may afterwards become so by being concealed or not pursued, by which means creditors are drawn in to lend their money.'"

There was an estoppel which works priority in favor of the appellants' liens for the work performed after the date of the assurance by the bank's officer and until the date of knowledge of the mortgage.

The appellant Mountain View Brick Company, pursuant to a contract with Parr, supplied brick which was used in the erection of the hotel. On March 14, 1929, the Mountain View Brick Company filed notice of lien for $782.75. It does not appear, from the record, whether that sum is additional to Parr's lien for $13,710.43. The court below stated that the liens of Ash and Parr were the only liens to be considered. In the absence of this lien being pressed upon us, we will assume that the material supplied is charged in the Parr lien.

Decree reversed, with costs.