NOLOP, Respondent, vs. SPETTEL, Appellant.

*May 6—June 8, 1954.*

246

For the appellant there were briefs by *Johns, Roraff, Pappas & Flaherty* of La Crosse, and oral argument by *Leonard F. Roraff.*

For the respondent there was a brief by *Hale, Skemp, Nietsch, Hanson & Schnurrer* of La Crosse, and oral argument by *Thomas H. Skemp.*

FAIRCHILD, C. J. Although there was never a written contract between the parties to this action, it is stipulated that they agreed to be bound by a written contract that had existed between the respondent and one Doctor Hulick, the pertinent portions of which contract follow:

"2. The owner agrees and covenants with the contractor to pay or cause to be paid to the contractor for the work performed, and the materials furnished by the contractor as follows:

"The actual net cost to the contractor of the materials actually furnished and labor and cartage actually performed by him hereunder on and for said building, plus a profit of 10 per cent.

"The term actual net cost shall include the following:

"(a) The cost of all labor furnished;

"(b) The actual net cost of all materials purchased as shown by the original invoices;

"(c) The expense incurred by the contractor for cartage of all supplies and other expenses incidental to the erection of the building;

"(d) The cost of rental of any equipment which the contractor deems necessary or beneficial in the erection of the building;

"(e) The cost of insurance including workmen's compensation expended by the contractor in the erection of the building, except subcontracts.

"3. The owner is to make payments to the contractor . . . to be based upon a detailed itemized statement supported by invoices showing the net cost of materials delivered to the building site, materials actually installed in the building, the cost of cartage, the expenditure of labor, . . .

"4. The contractor agrees to keep accurate records and books of account showing the cost of the work performed and materials furnished . . .

"5. The contractor agrees ·that in consideration of the services performed by him that the sum hereinbefore agreed to be paid to him as contractor shall be full and complete compensation for the services to be performed by the contractor, it being the understanding between the parties that the contractor shall receive 10 per cent of the total cost of the erection of the building as compensation for his services."

During the progress of the construction of the buildings statements showing various charges for labor at an hourly rate were submitted to appellant. The evidence shows that appellant was under the impression that all of the charges made by respondent for labor were the amounts actually paid in wages at the rates claimed; and that appellant continued to make payments without objection until the residence was substantially completed, at which time he learned from one of the painters that the rate per hour charged for his services to appellant was higher than the rate actually paid him by

respondent. Appellant, then unwilling to pay the balance claimed by respondent, insisted that an accounting be had. An action was begun, and an adverse examination of respondent was had in May, 1953. Then for the first time appellant learned what respondent had in fact paid his employees. The items claimed by respondent were reviewed in detail before a referee, and some of the items were disallowed. The referee made his findings of fact and concluded that appellant was indebted to respondent in the sum of $756.82, with interest from April 28, 1952. The circuit court confirmed the referee's report and ordered judgment accordingly.

The first contention of the respondent, that appellant, by his actions in failing to complain to the contractor and in making payments on the contract and ordering new work to be done, waived any objections to any alleged overcharges or methods of computations, cannot be sustained. The great weight and clear preponderance of evidence does not permit of a finding that appellant, at the time he made those payments, was apprised that the rates per hour and the totals for labor set forth in statements presented to him by respondent included overcharges to cover an excess of incidentals or overhead. He did not learn that he was being so charged until the building was substantially completed. "A waiver is the intentional relinquishment of a known right." *Swedish American Nat. Bank v. Koebernick,* 136 Wis. 473, 479, 117 N. W. 1020. "Since an intention to relinquish an existing right or advantage is generally regarded as an essential of a waiver, it follows that it must be shown by the party claiming a waiver that the person against whom the waiver is asserted had at the time knowledge, actual or constructive, of the existence of his rights or of the facts upon which they depended. Ignorance of a material fact negatives a waiver. Waiver cannot be established by a consent given under a mistake of fact." 56 Am. Jur., Waiver, p. 114,

sec. 14. At no time did the respondent inform appellant as to what he in fact was paying his men; appellant had no knowledge of the overcharge at the time he paid the bills presented to him; therefore no waiver existed.

Respondent's second contention, that labor includes items other than wages, is an unwarranted interpretation of the contract. He has taken the provision under subparagraph (c) of the contract allowing him "other expenses incidental to the erection of the building" and treated it as if it were part of (a) which refers to "the cost of all labor furnished;" then he has insisted that it be included as overhead. Using this method of computation, respondent has billed appellant for labor an amount per laborer greater than the actual amount paid out per laborer in wages.

The contract in question is a cost-plus contract. It provides separately for a profit of 10 per cent to be realized by the contractor on the cost of the erection of the building. The term "actual cost" governs the entire contract and applies to each of the subitems, i. e., labor, material, cartage, incidental expenses, rental equipment, and insurance and workmen's compensation. Further, payment by appellant for all of these separate items is subject to their being actually furnished or actually performed *on and for said building,* as stipulated in the second paragraph of the Dr. Hulick contract.

A review of available cases on cost-plus contracts and analogous cases requires the recognition of the general rules which are to be applied to the instant case. In one of the leading cases on this subject, it is said: "The term 'overhead,'—including the salaries of executive or administrative officials, interest charges for floating bonds, carrying charges, depreciation, taxes, and the general office expenses as here claimed,—cannot be allowed as an operating charge in 'cost-plus' contracts. To do so would open the doors to a flood of obligations not intended by the innocent words used in a contract such as the one before us. The term 'time and ma-

terial basis' was intended to include the necessary cost of operation *affecting the particular undertaking,*—the cost of *labor and materials that went into and became part of the finished product;* each outlay thus expended must be included. To this there was to be added a profit of 10 per cent. This latter item was intended to take care of that proportionate share of overhead charges included in the company's 'overhead,' or general expense, discussed above, as this contract related to plaintiff's general contracts, and, unless expressly written into the contract by defining exactly the overhead intended to be covered, the words 'time and material,' *and like expressions,* will not include overhead charges, but refer solely to the *wages and salaries of the men engaged in the particular work contracted for and the actual cost of the materials* furnished. The words will not be extended beyond their exact meaning, and indeed they should be given a restricted meaning. At least they should be considered in the sense in which they are popularly understood. One thus contracting engages to furnish and keep in condition the tools and necessary equipment to do the work." *Lytle, Campbell & Co. v. Somers, Fitler & Todd Co.* 276 Pa. 409, 415, 120 Atl. 409, 27 A. L. R. 41. (Emphasis supplied.) In the case of *The Spica* (2d Cir.), 289 Fed. 436, the contract specifically provided for "cost to include overhead," and there the court said (p. 445) : "It is true that in a certain sense cost includes overhead, but by this contract libelant agreed in effect to charge for such a laborer what was actually paid the man plus a reasonable overhead. . . . That meant, among other things, that it was necessary to prove the overhead." In that case, the court gave an illustration to show the divergence between what libelant asserted and tried to prove and what the evidence showed it contracted to do : "Capt. Figari complained that one of the items in the bill was a charge for the labor of certain men at $10.60 per day of eight hours, when the amount actually paid each man was 82¢ an hour, or

$6.56. Such a charge obviously contains both overhead and profit." In *Shaw v. Beaumont Co.* 88 N. J. Eq. 333, 102 Atl. 151, 2 A. L. R. 122, it is said (p. 338) : ". . . a contractor, when he agrees to build must, in the absence of a contrary agreement, furnish all the tools and necessary appliances for the work contracted to be done." See also *Marion Machine, Foundry & Supply Co. v. Allen,* 119 Kan. 770, 241 Pac. 450, 451; *Gates & Co. v. Stevens Construction Co.* 220 N. Y. 38, 49, 115 N. E. 22. In *State v. Northwest Poultry & Egg Co.* 203 Minn. 438, 443, 281 N. W. 753, the term "actual cost" is said to import "the exact sum expended or loss sustained rather than the average or proportional part of the cost." In *Lancaster v. George,* 315 Pa. 232, 234, 172 Atl. 686 (a lien case), it is said the word "labor" should be confined to its primary meaning, and should not be broadened so as to carry the liability of a surety to indefinite and uncontemplated lengths. We also find in *Lytle, Campbell & Co. v. Somers, Fitler & Todd Co., supra,* the following statement (p. 414) : ". . . operating charges are those which may be seen as the work progresses and are the subject of knowledge from observation. The really essential line of distinction, as we view it, is that the one is a producing cost, capable of being ascertained by those dealing with the company, and the other is a nonproductive, or indirect, charge, . . ."

In the light of the foregoing authorities it is considered that the following principles govern cost-plus contracts: If overhead expense is to be allowed, it must be expressly written into the contract, and the overhead intended to be covered must be defined. If it is written into the contract, it must be established by competent proof. Actual cost must be based on labor and materials that become a part of the completed work. Actual cost cannot be computed upon the average or proportional part of the cost but must be the exact sum expended. Among the items of overhead which cannot be

charged as actual cost are unproductive labor, depreciation on and use of equipment owned by the contractor, use of equipment and tools, and general office expenses.

It will not be necessary to reproduce here the computation tables prepared by appellant showing the actual hourly and total wages paid by respondent and the hourly and total wages charged appellant. They are undisputed, and it will be necessary only to apply the general principles which control in order to show that the respondent's claim for "mark-up" must be disallowed in all instances.

It is clear that in the instant case respondent's overcharge included a charge for unproductive labor. In the construction of this building the respondent employed two types of workmen, one, regular employees, and the other, student employees. The student employees were indentured to him by the industrial commission of Wisconsin and were paid the wages fixed by that commission. However, in charging appellant for their labor, respondent made a higher charge to include the expense of sending them to school and of paying them whether they worked or not. As to one apprentice, respondent testified: "He had spent practically a year training with my journeymen carpenters before he took up his apprenticeship. We spent considerable time teaching him the carpenter trade before that. That would give us an expense right there. We also had the expense of sending him to school once every two weeks for the full eight hours and paying him for schooltime regardless of whether he worked or not." Respondent further testified that the extra charge was on the basis of the "average cost to us over a period of a year for each student." Speaking of a union man, respondent said that if he called such a workman for only one hour in the morning, he had to pay him for four hours. He said that he did not charge for this additional time; yet he testified: "Any lost time was taken care of in my extra charge per hour." Obviously, time spent in school or off the job

is not labor "actually performed . . . on and for" appellant's building; and "average cost" is not an actual cost.

Further, it is clear that the overcharge on labor included cost of equipment. Respondent testified that he charged, under the provision for labor, for "the use of my equipment, brushes, dropcloths, scaffolding, and so forth."

Bookkeeping is another item which respondent includes in his overcharge. He testified: "We have a bookkeeping charge there. We have to make out monthly reports . . . of the hours that they put in, where they work, and what their rate of pay is. That is an expense to me."

The only charge which the contractor might have been allowed and which might have been assigned to labor was transportation of the workmen, because that might be a part of the compensation of the laborer. However, respondent did not prove this item separately. No evidence of the actual cost of transportation is shown except as it is included in unallowable items of overhead. The respondent agreed to keep accurate records to show actual costs. If he had done so, he might have proved the cost of gas and oil which he paid out for transportation of these men. As shown above, depreciation was an item not to be taken into account in connection with his truck or any of his equipment.

Insurance, including workmen's compensation coverage, an item of overhead properly to be allowed, is provided to the contractor under subparagraph (e) and was itemized and charged separately as such on statements furnished appellant. There is no dispute about that item.

Much evidence was heard and considered by the referee on practices and customs of the trade. This evidence has no bearing on the instant case. Here we are concerned with a cost-plus contract, prepared by respondent, and based on actual cost plus a profit of 10 per cent. The intention of the parties is plainly expressed on the face of the contract. The terms "actual cost," "actually performed," "actually fur-

nished" are repeated throughout the contract, and they apply to appellant's building specifically. Furthermore, in case of ambiguity the contract is to be construed strictly against the party who drafted it. 12 Am. Jur., Contracts, p. 795, sec. 252; *Nordale Realty Co. v. Hanel,* 251 Wis. 136, 141, 28 N. W. (2d) 245.

We must therefore disagree with the referee's allowance of the item of overcharge on labor. We hold that actual cost of labor is the wage per hour on a specific job and must pass over the claim of transportation, for transportation was not proven in this case. The following excess labor charges are accordingly disallowed respondent:

Regular employees . . . . . . . . . . . .$355.09
10 per cent of above sum . . . . . . .   35.50
Apprentice employees . . . . . . . . .   72.17
10 per cent of above sum . . . . . .    7.21
Total disallowed as extra labor ———
 charge  . . . . . . . . . . . . . . . . . . .$469.97

The next item claimed by respondent is a charge for tractor service. Respondent used the prevailing rate of $6 an hour as the rate for this type of service and computed the charge at 23 hours for the operator's time, plus 10 per cent profit, making a total of $138 plus $13.80, or $151.80. To apply the prevailing rate,—in which profit and overhead are presumably included—and to add 10 per cent profit is to make two profits on this item. The contract calls for the actual cost, not the prevailing rate. The only part of the cost proven was the wages of the operator, who was paid at the rate of $1.37 per hour for a period of thirteen hours, and at the rate of $1.75 per hour for another period of ten hours. In any event, as pointed out above, respondent could not include in "actual cost" a charge for his equipment or depreciation on it. Since he did not prove any expense other than wages in connection with this service, the amount to which he is entitled is $17.81 for thirteen hours' service, plus $17.50

for ten hours' service, plus 10 per cent profit, or a total of $38.84. The following amount is therefore disallowed:

Service and profit claimed......$151.80
Amount proved..............  38.84
Amount disallowed on claim for ———
    tractor service.............$112.96

Another item claimed by respondent is a charge for cartage of plywood panels from Caxton Company, Minneapolis to La Crosse. Under subparagraph (c) providing for "the expense incurred by the contractor for cartage of all supplies," respondent billed appellant for two trips to Minneapolis to haul plywood for a distance of 600 miles at 15 cents per mile, but failed to produce evidence to support a charge of $90 as being the cost of these trips. This item also was properly disallowed by the referee because unproven.

An item of $20 for two deliveries and storage of a hot-water heater which, because of a change in plans was not used, was properly disallowed by the referee, because the claimed costs of transporting, loading, and storing were not substantiated by any evidence.

The following items alleged in respondent's amended complaint are undisputed and therefore allowed to respondent:

Water heater........................$  8.81
Wiggert Bros........................  63.46
Commission automatic window...........  39.80
Corrected commission Segelke-Kohlhaus...   3.20
Error in Sigurd Stevenson wage..........  15.50
                                       ———————
                                       $130.77

Respondent is entitled to the claimed item of $39.58. It appears that the original Kratt lumber bill was for $248.15, which amount was billed appellant in respondent's statement of April 28, 1952. However, in its supplemental statement of May 29, 1953, respondent gave appellant a credit of

$39.58 for merchandise returned. There was a balance, therefore, of $208.57, and this is the amount appellant actually paid to Kratt and was the net amount owed after deduction of the credit item. However, at the time appellant paid the amount of $208.57, the Kratt Company issued him a check for $39.58 to balance the account as it appeared at that time on its books. Thus appellant received a credit of $39.58 twice, once on the respondent's corrected statement of May 29, 1953, and again by refund from the lumber company. Since he paid only $208.15, the amount due after credit allowed him by respondent, he was not entitled to the refund at the time he paid the $208.15. Instead, the respondent is entitled to recover the amount of $39.58 by adding it again to the bill.

The trial court granted judgment in the amount of $756.82. The total amount claimed in both the original and amended complaint was $1,101.88. Of this amount the court disallowed $345.06 as follows:

Excess labor charges on two workmen.......$122.10
Tractor services.......................... 112.96
Transportation of plywood................. 90.00
Transportation and storage of water heater... 20.00

Total disallowed.............$345.06

To those items disallowed by the trial court must be added, in accordance with this opinion, excess labor charges for the balance of the laborers amounting to $313.07:

Amount of claim..........................$1,101.88
Amount disallowed by trial court..$345.06
Amount disallowed on appeal..... 313.07.... 658.13

$ 443.75

The amount due and owing respondent by appellant is, therefore, $443.75.

There was an offer before trial by appellant that judgment be taken against him for $585 with costs. The offer was not accepted by respondent. Now, because he fails to recover a more favorable judgment, he cannot recover costs, and appellant's costs are to be allowed by the trial judge under sec. 269.02, Stats.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with this opinion and for entering of the proper judgment. Appellant to be entitled to costs on this appeal as limited by Rule 10 of this court.