Alfred W. MUTH, Plaintiff,

v.

J. W. SPEAKER CORPORATION, Defendant.

Civ. A. 6109.

United States District Court
E. D. Wisconsin.

April 29, 1957.

·Carl R. Becker of Becker, Kinnel, Doucette & Mattison, Milwaukee, Wis., for plaintiff.

Ira Milton Jones, Milwaukee, Wis., Charles F. Millmann, Milwaukee, Wis., of counsel, for defendant.

GRUBB, District Judge.

This is a suit for royalties allegedly due and owing under a written contract. The defendant has counterclaimed for all royalties paid prior to the initiation of this action. The issue of damages was severed and is not covered by this opinion.

The plaintiff, Muth, was engaged in the business of manufacturing and selling an automobile accessory known as the Muth "Brake-Saver". In 1942, a patent, No. 2,305,983, issued to Muth covering a switch structure. That switch structure pertained to a device suitable

for lighting a signal light on the dashboard of a vehicle when the parking brake was set and the ignition was on.

Sometime in 1948, Muth and the defendant, hereinafter referred to as Speaker, began negotiations relative to the Muth "Brake-Saver". It appears from a letter written December 21, 1948, from Speaker to Muth, that it was contemplated that Speaker would take over the sale and distribution of the Muth "Brake-Saver", and that Muth would manufacture the "Brake-Saver" for Speaker.

A different arrangement was reached, however, and on January 31, 1949, Speaker wrote a letter to Muth which contains the alleged contract. The text of the letter-contract is set forth in a footnote.[1] Thereafter, the parties proceeded to act under its terms. Muth went out of business and transferred his inventory to Speaker. That inventory was paid for and is not involved in this action. Speaker, in turn, began paying royalties to Muth. The testimony and exhibits discloses that after about one year of royalty payments Muth contacted one of Speaker's customers in an effort to discover how many "Brake-Savers" were being sold. Speaker was informed of the inquiry and wrote to Muth in February, 1950 expressing its concern with Muth's actions. Speaker then discontinued further royalty payments.

■ The first question which must be decided is whether the document of January 31, 1949, constitutes a valid contract. In considering this issue this court will construe any ambiguous language according to the rule laid down in Nolop v. Spettel, 1954, 267 Wis. 245, 64 N.W.2d 859, wherein it was stated:

"* * * in case of ambiguity the contract is to be construed strictly against the party who drafted it." 267 Wis. at page 255, 64 N.W.2d at page 865.

1. "January 31, 1949

"Mr. A. W. Muth
"719B South 5th
"Milwaukee, Wisconsin

"My dear Mr. Muth:

"Confirming our oral agreement of January 29th in which the J. W. Speaker Corporation and A. W. Muth agreed mutually that the J. W. Speaker Corporation will take over the manufacture and sale of the Brake Saver Signal Light, and we understand that there has been a patent issued No. *2,305,983* covering the Plunger Type Switch which contains one claim covering the pointed screw and beveled washer constituting the entire claim and patent.

"According to the council (sic) the patent is a very weak one and can be circumvented, and therefore, does not offer any protection from infringements. However, it was agreed that the J. W. Speaker Corporation will pay A. W. Muth a 5 cent royalty on each Brake Saver Signal Light sold and that set royalty will be paid on a quarterly basis on the 15th day for the following three months.

"It was further mutually agreed that: A. W. Muth will transfer all material on a consignment basis to the J. W. Speaker Corporation, and that the J. W. Speaker Corporation will pay for those materials as it makes sales and account for it on a monthly basis, and set (sic) material will be paid on the 15th of each following month until paid in full. On inventories which are unbalanced the price is to be determined by mutual agreement.

"It was further agreed that: A. W. Muth will furnish the J. W. Speaker Corporation with an assembler whom we understand is a daughter-in-law of Mr. Muth and that the J. W. Speaker Corporation will hire her at a prevailing wage rate.

"It is further understood and agreed upon that: The J. W. Speaker Corporation does not assume any liabilities whatsoever for materials, services, tools, dies, etc. in any shape, matter (sic) or form or for any agreements which A. W. Muth made in the past.

"It is further mutually agreed that: This agreement cannot be cancelled and the cancellation clause will be incorporated in the final draft and the cancellation time is to be agreed on when making the final draft.

"Witness
"R. A. Nevins     A. W. Muth
             "A. W. Muth
"Witness
"Lois M. Naidl   John W. Speaker
          "J. W. Speaker
          Corporation"

One of the defenses interposed is that the device being manufactured by the defendant does not follow the patent. Defendant claims that the contract was a patent license agreement and that it does not owe Muth royalties since it is not following the patent in its manufacture of the "Brake-Saver". Defendant further claims that unless its "Brake-Saver" comes within the scope of Muth's patent, there is no consideration for the royalties.

The evidence shows that at the time of the agreement of January 31, 1949, plaintiff was manufacturing a "Brake-Saver", which is in all respects the identical product which defendant has manufactured and sold since January 31, 1949. The contract itself speaks of the patent as being a very weak one and that it can be circumvented; that it does not offer any protection from infringements. This contract was drawn by the defendant. The parties very clearly had in mind at that time what the contract sets forth. Defendant was thoroughly familiar with the device which plaintiff was manufacturing and was aware of such differences as there are between that device and the device covered by the patent. It is to be noted that the contract makes no mention of paying royalties for the use of the patent or for each device which incorporated the patent. It provides that royalty shall be paid on each "Brake-Saver Signal Light".

■ The court finds that the defendant was not interested in a strictly license agreement under the Muth patent. Defendant's own contract expressly stated that the patent was weak and afforded no protection. Defendant wished to manufacture Muth's device without legal interference from Muth. To accomplish this, defendant agreed to pay royalties "on each Brake Saver Signal Light sold". Freedom for the defendant to manufacture Muth's "Brake-Saver" without fear of litigation from Muth, without having to litigate the question as to whether the device manufactured was under the patent, is, in the court's opinion, consideration to support the payment of royalties. The court finds that the parties agreed that defendant could manufacture without interference from plaintiff and did pay to the plaintiff for that privilege royalties "on each Brake Saver Signal Light sold", referring to the "Brake-Saver Signal Light" being manufactured and sold by the plaintiff on the date of the contract and which was thereafter manufactured and sold by the defendant without regard to the question as to whether it came under the terms of the patent in all respects.

■ Defendant is estopped as licensee to question the validity of the patent. Defendant has been manufacturing and is manufacturing the device which the parties agreed upon whether it comes under the patent or not and to whatever extent it embodies features of the patent.

■ The last paragraph of the alleged contract provides:

"It is further mutually agreed that: This agreement cannot be cancelled and the cancellation clause will be incorporated in the final draft and the cancellation time is to be agreed on when making the final draft."

That paragraph looks forward to a final draft and to a future agreement as to cancellation time. The testimony shows that the parties began performing under the terms of the document. J. W. Speaker, President of Speaker, testified that he didn't give any further thought to the final paragraph after the document was signed. Neither plaintiff nor defendant made any effort or move to agree upon any other or different cancellation clause than that contained in the agreement of January 31, 1949. Each apparently was satisfied with that entire agreement as they commenced to perform and live up to the agreement until defendant objected to plaintiff's checking up on the number of "Brake-Savers" sold by making inquiries of defendant's customers.

In many instances a "contract" which contains some indefinite provisions or which contains a contract to contract is not enforceable. But this is not always so. It is stated in 1 Corbin on Contracts, § 29:

"We must not jump too readily to the conclusion that a contract has not been made from the fact of apparent incompleteness. People do business in a very informal fashion, using abbreviated and elliptical language. *A transaction is complete when the parties mean it to be complete.* It is a mere matter of interpretation of their expressions to each other, a question of fact. An expression is no less effective that it is found by the method of implication." (Emphasis supplied.)

"Even though certain matters are expressly left to be agreed upon in the future, they may not be regarded by the parties . as essential to their present agreement."

"The court will be more ready to find that the apparently incomplete agreement was in fact complete and required the payment and acceptance of a 'reasonable' price or a performance on 'reasonable' terms, in case the parties have already rendered some substantial performance or have taken other material action in reliance upon their existing expressions of agreement. The fact that they have so acted is itself a circumstance bearing upon the question of completeness of their agreement."

The conduct of the parties indicates that no further thought or action was taken in relation to a cancellation clause after the signing of the document of January 31, 1949. It is the finding of this court that the parties by their subsequent conduct evidenced the intention that the contract was satisfactory and complete in its January 1949 form; that the term of the contract referring to a cancellation clause was not regarded by the parties as an essential term of their contract; and that the contract is valid and enforceable.

■ The court must now determine the duration of the contract in question. The parties contracted with reference to a device, actually being marketed by Muth, which may or may not incorporate *in toto* Letters Patent 2,305,983. The only reasonable construction of the duration of the contract is with reference to the life of the patent, for it is only during the life of the patent that Speaker need fear litigation from Muth. This court finds that the contract is to terminate when the monopoly granted under Letters Patent 2,305,983 is exhausted. The contract may not be terminated prior to that time except by the mutual consent of the parties.

Plaintiff's counsel is directed to prepare proposed findings of fact and conclusions of law in conformity herewith, submitting them to defendant's counsel for approval as to form only. The provision as to damages is to be left blank until damages are determined, at which time that blank will be completed.

The parties are directed to endeavor to arrive at a stipulation on the question of damages. In the event that they fail to do so, the matter is set for hearing on Monday, May 27, 1957 at 9:30 o'clock a. m., for determination as to whether there will be a trial on the issue of damages before the court or whether that issue will be referred to a Master pursuant to Rule 53(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.