Alfred W. MUTH, Plaintiff-Appellee,

v.

J. W. SPEAKER CORPORATION,
Defendant-Appellant.

No. 12409.

United States Court of Appeals
Seventh Circuit.

Jan. 23, 1959.

Ira Milton Jones, Milwaukee, Wis. (James R. Custin, Milwaukee, Wis., on the brief), for defendant-appellant.

Carl R. Becker, Milwaukee, Wis. (Becker, Kinnel, Doucette & Mattison, Milwaukee, Wis., on the brief), for plain--tiff-appellee.

Before FINNEGAN,[1] PARKINSON and KNOCH, Circuit Judges.

PARKINSON, Circuit Judge.

This is an action by the plaintiff, Alfred W. Muth, to recover from defendant, J. W. Speaker Corporation, royalties allegedly owing pursuant to a written contract under which the latter manufactured and marketed a device originally made by Muth known as a brake saver warning light.

Plaintiff, for a number of years prior to 1948, had been working on a signal light which provided a warning to an automobile operator that his parking brake was engaged when the ignition was in contact. A patent, No. 2,305,983, had been issued to the plaintiff on December 22, 1942 dealing with a plunger type switch which he had devised for use in his warning light.

In the latter part of 1948 the defendant began negotiations with plaintiff with the view in mind that it would market and sell the warning light. Such an arrangement was completed and plaintiff then cancelled a similar agreement with his previous distributor.

On January 29, 1949 there was a second agreement whereby the defendant was to manufacture the warning light in addition to selling it. In a letter from defendant to plaintiff, dated January 31, 1949, this agreement was reduced to writing as follows:

"My dear Mr. Muth:
"Confirming our oral agreement of January 29th in which the J. W. Speaker Corporation and A. W. Muth agreed mutually that the J. W. Speaker Corporation will take over the manufacture and sale of the Brake Saver Signal Light, and we understand that there has been a patent issued No. 2,305,983, covering the Plunger Type Switch which contains one claim covering the pointed screw and beveled washer constituting the entire claim and patent.

*"According to the council [sic] the patent is a very weak one and can be circumvented, and therefore, does not offer any protection from infringements.* However, it was agreed that the J. W. Speaker Corporation will pay A. W. Muth a 5 cent royalty on each Brake Saver Signal Light sold and that set [sic] royalty will be paid on a quarterly

---

1. Judge Finnegan participated in the consideration and disposition of this case, voting to affirm, but died before the formal opinion was announced.

basis on the 15th day for the following three months.

"It was further mutually agreed that: A. W. Muth will transfer all material on a consignment basis to the J. W. Speaker Corporation, and that the J. W. Speaker Corporation will pay for those materials as it makes sales and account for it on a monthly basis, and set [sic] material will be paid on the 15th of each following month until paid in full. On inventories which are unbalanced the price is to be determined by mutual agreement.

"It was further agreed that: A. W. Muth will furnish the J. W. Speaker Corporation with an assembler whom we understand is a daughter-in-law of Mr. Muth and that the J. W. Speaker Corporation will hire her at a prevailing wage rate.

"It is further understood and agreed upon that: The J. W. Speaker Corporation does not assume any liabilities whatsoever for materials, services, tools, dies, etc. in any shape, matter [sic] or form or for any agreements which A. W. Muth made in the past.

"It is further mutually agreed that: *This agreement cannot be cancelled* and the cancellation clause will be incorporated in the final draft and the cancellation time is to be agreed on when making the final draft." (Italics supplied)

Plaintiff then completely withdrew from the business after transferring to defendant his inventory, which was of considerable size, and all of his then unfilled orders. Defendant then manufactured and paid the royalties on 4,153 warning light units.

Early in 1950 the defendant learned that plaintiff had been making inquiries of defendant's customers in an attempt to ascertain whether the correct amount of royalties had been paid. This aggravated the defendant's president who, after writing to plaintiff, ordered royalty payments discontinued though defendant did thereafter sell 95,847 additional units.

The District Court found that the letter of January 31, 1949 constituted a valid and enforceable contract and rendered judgment for plaintiff. This appeal followed. The parties stipulated as to the number of warning light units sold by defendant upon which no royalty had been paid and, therefore, the amount of damages is not here in issue.

Defendant's appeal "raises the general question of whether defendant is liable for royalty payments under the letter of January 31, 1949."

Defendant argues that the agreement is not binding inasmuch as: "Plaintiff's patent, No. 2,305,983, does not cover any part of the brake saver signal light kit, either as made by plaintiff or as made by defendant"; "The letter of January 31, 1949, if regarded as a contract, is voidable at the option of either party because entered into under a mutual mistake of fact"; "The letter of January 31, 1949 expressly shows that there had been no meeting of the minds of the parties, and hence it is not a contract"; and "An obligation to pay royalties cannot be imposed upon defendant by regarding the letter of January 31, 1949 as something more or less than a patent license".

■ Defendant makes quite an issue of whether plaintiff's patent is or is not incorporated into the warning light. It contends that the "District Court made no finding that the patent covers any part of defendant's device." In this it is correct and this is what renders the contention worthless. Defendant desired to manufacture and sell the warning light plaintiff was then producing free from the possibility of protracted patent litigation. Hence we agree with the District Court that in this case what if anything the patent covered in the warning light is wholly irrelevant. Heath v. A. B. Dick Company, 7 Cir., 1958, 253 F.2d 30, 35.

■ Defendant's next contention that there is a mutual mistake of fact in that it "expressly acknowledged in the letter

of January 31, 1949 its belief that the patent claim covers the brake saver switch" is without merit. We quote from that letter: "According to the council [sic] the patent is a very weak one and can be circumvented, and therefore, does not offer any protection from infringements." In addition, Mr. J. W. Speaker, the president of defendant, testified as follows:

"I only told Mr. Muth that when I looked over the patent, and being somewhat familiar with the patents, I mean, and owner of quite substantial quantities, that I told Mr. Muth in all fairness that the patent isn't worth the paper it is written on."

Further expansion would be uncharitable. We dismiss it.

Defendant's third argument is that inasmuch as the parties did not specify a terminal date and that the "rights to be granted under the prospective patent license, and the limitations upon those rights, [were] not set forth in the letter" there was no meeting of minds between the parties. The first part of this argument ignores the fact that the letter, written by defendant's president himself, specifically states that the agreement could not be cancelled. At the worst this is merely an awkward way of stating that the agreement could only be terminated by mutual consent in that it is quite obviously impossible for both parties to a contract to bind themselves in such a manner that they could not by mutual consent extricate themselves therefrom.

It is also true that the letter speaks of a "cancellation clause" to be "incorporated in the final draft". Again, however, it is noted that defendant's president, the author of the agreement, not only failed to make a final draft but he testified that he never gave the matter any further thought. It appears that both parties then went forward with the contract, fulfilling all requirements, with the knowledge that one could not terminate without the other's permission. We do not think that defendant should be allowed to come forward and deny the

existence of a valid contract simply because it now might wish it had insisted upon other terms. It might also be kept in mind that defendant need not manufacture and sell any of the warning light units if it does not wish to and in that case no royalty would be owing.

As to the other rights and limitations mentioned by defendant we find only one contention made, i. e., the contract should be held incompete because an exclusive right is not granted to defendant. This argument fails in two respects. First it appears from the prior negotiations to market the units, the terms of the agreement itself and the surrounding circumstances that an exclusive right had been granted by plaintiff. However assuming, arguendo, that this were not the case defendant then would merely have the right to make these warning lights as long as it chose provided it paid the agreed royalty to plaintiff. If plaintiff then gave a similar concession to another, defendant could hardly then be heard to complain inasmuch as the omission, if any, was his own doing. In short defendant did not bargain for an exclusive contract, therefore, it can not complain of absence, if any, of exclusive rights.

Defendant's final argument goes to the sufficiency of consideration. We agree with the District Court that it was quite sufficient. Plaintiff transferred to defendant all of his not inconsiderable. inventory. While it is true defendant paid for *some* of it there is certainly grounds for the clear inference that there never would have been a transfer had not defendant agreed to pay the royalties. In addition plaintiff not only cancelled out his prior distributor but entirely removed himself from the business.

The District Court also held as follows:

"* * * that the defendant was not interested in a strictly license agreement under the Muth patent. * * * Defendant wished to manufacture Muth's device without legal interference from Muth. * * * Freedom for the

defendant to manufacture Muth's 'Brake-Saver' without fear of litigation from Muth, without having to litigate the question as to whether the device manufactured was under the patent, is, in the court's opinion, consideration to support the payment of royalties." [151 F.Supp. 190.]

Defendant throughout its brief suggests that it might be contrary to public policy to make it pay a royalty where others would make the same device without such payment. However, it is not definitely known whether another would make the device without running the risk of an infringement suit. The question apparently concerned defendant also and it led to the agreement in question. The defendant chose to buy immunity from lawsuits, justified or otherwise, at a certain price. It got just what it paid for. To allow defendant to renege on its agreement simply because it may now feel that it was overcautious would certainly be more incompatible with public policy.

The judgment is Affirmed.