Allen and another vs. Murray.

ALLEN and another, Respondents, vs. MURRAY, Appellant.

*January 12 — January 30, 1894.*

(1, 2) *Evidence: Instructions to jury: Credibility of witness.* (3-8) *Contracts: Preventing completion: Sunday: Measure of damages: Interest: Evidence.*

1. An instruction to the effect that the party upon whom the burden of proof rests should satisfy the jury "to a reasonable certainty," is criticised but *held* not prejudicial to the defendant in this case, upon whom the burden of proof did not rest except as to one or two points in respect to which the preponderance of evidence was clearly and very decidedly against him.

2. If a witness wilfully testifies falsely in regard to any matter material to the case, the jury may, if they see fit, reject all of his testimony which is not corroborated by other credible evidence.

3. One for whom work is being done under a contract is liable in damages for preventing the completion of such contract, even though the wrongful act of stopping the work was done on Sunday.

4. The measure of damages for preventing the completion of a contract to cut and deliver logs is the difference between the contract price and what it would have cost to complete the contract.

5. The jury may, in such a case, allow interest from the date of suit.

6. The profits of the contractors under another contract made during the same logging season after being prevented from completing the contract in question, are not to be considered in reduction of the damages.

7. The testimony of one of the contractors that, with the crew and equipments which they had when the work was stopped, they could have completed the contract within a certain time, was in

Allen and another vs. Murray.

the nature of expert evidence and admissible; and so, also, of the testimony of a lumberman as to the cost of hauling the logs if the facts were as the contractor testified, and as to what it was worth to supply men for putting in logs.

8. Evidence as to what it cost another person for supplies and to put in logs the next season was inadmissible.

APPEAL from the Circuit Court for *Douglas* County.

This action was brought by the firm of Allen & Watterson to recover against the defendant the damages claimed by them by reason of the breach by the defendant of a contract that they made with him November 18, 1891, by which they agreed to cut, haul, and deliver into and put afloat in Amnicon river, and drive to the mouth thereof, all the merchantable pine saw logs growing and being on the northwest quarter of a certain section 10 that would scale nine inches at the small end, the cutting and hauling to be fully completed by April 15, 1892, and delivery to be made afloat as soon after as said river might be opened, all for the price of $3.51 per 1,000 feet, board measure, payable in certain instalments, the last of which was to be paid October 1, 1892. It was alleged that the plaintiffs commenced to perform on their part, and to that end commenced to build, and built, logging roads, purchased and procured tools, implements, supplies, and quarters, and employed men and teams, and commenced to cut, skid, haul, and place on proper rollways on said river said timber, and did properly cut and deliver 58,000 feet thereof; but that on the 6th of March, 1892, the defendant, without just cause, forced and compelled the plaintiffs, against their wishes, to quit said work, and forbade them to cut or haul any more of said timber, when there was at least 1,000,000 feet thereof on said lands, and the plaintiffs were ready, willing, and able to fully perform the contract on their part within the time so limited, whereby they had lost the profits thereof, namely, $1,500.

The defendant claimed in his answer, in substance, that the plaintiffs had not been damaged by any action or lack of action on his part; that the plaintiffs were unable to perform the contract, and had not the necessary means or supplies; that they assented to quitting work at the time stated, and afterwards logged elsewhere, making more than they could have made had they continued at work on said contract; that they had been paid upon settlement for all the work they performed, and had waived all other rights under the contract.

Upon trial before a jury it appeared that at the time the contract was made the plaintiffs made a similar one with one Carmichael, to cut, haul, and deliver, at the same point on the river, the pine timber on the southwest quarter of the said section, and the said Carmichael also owned other pine timber near by, which he desired cut and banked; that the plaintiffs, by March 6, 1892, had so nearly performed their contract with Carmichael that it could be completed within three days, and had made three roads in a north and south direction through the defendant's land, over which much of the timber from Carmichael's tract had been hauled, and over which that on the defendant's land could be also hauled, to or near the mouth of the river; that they had cut, hauled, and banked 58,000 feet of the defendant's pine. Evidence was given tending to show that they had supplies, implements, etc., and thirty-seven men and the necessary teams in their employ, and would be able to perform their contract within the time limited, and that the necessary logging roads for that purpose had for the greater part been constructed. Testimony was also given in support of the contrary contention, and it appeared that at this time — March 6th — there came a thaw, and there were indications of a break-up and ending of the logging season, so that upon that day (Sunday) the defendant's agent came to the plaintiffs' camp, and ordered them to quit work, and for-

bade them cutting any more pine, alleging that the logging season was over. Two or three days afterwards a severe snow storm occurred, and the plaintiffs sought consent of the defendant to proceed with and perform their contract, but this was refused. It appeared that the defendant afterwards paid plaintiffs for cutting and banking the 58,000 feet at the contract price, and that later in the season the plaintiffs logged and put in other timber for Carmichael, after having considerably reduced their logging force. Considerable evidence was given *pro* and *con* as to whether the plaintiffs could have performed their contract before the logging season closed, which was about the end of March, and whether they had supplies and men and teams to enable them to do so, and what it would have cost them after March 6th to have completed it, and what profits, if any, would have been realized. Upon these points the testimony took a wide range; that on the part of the plaintiffs showing the cost per 1,000 at $2 to $2.50, and on the part of the defendant that it would be much more, and it was placed by some witnesses as high as $4 per 1,000.

The court submitted to the jury, in substance, whether the plaintiffs, on the 6th of March, 1892, were willing and able to proceed and complete the contract according to its terms; whether the plaintiffs informed the defendant that they could not carry out their contract as agreed; and whether, taking them at their word, the defendant in good faith forbade any further cutting under it, and saying that in such case the plaintiffs could not recover, nor could they if ordered to stop work and they consented thereto. The jury was instructed that the profits of the plaintiffs, if entitled to recover, would be such as they could have made by putting in the 950,000 feet of timber which it was admitted there was on the land; and such profits would consist of the difference between the contract price of $3.51 per 1,000, amounting to $3,334.50, and the amount the

Allen and another vs. Murray.

plaintiffs would have been required to expend after March 6, 1892, to complete the work, including the value of the supplies then on hand; and that to this difference might be added interest from October 26, 1892, the date of the suit. The rule of damages was twice repeated and fully explained, and the jury were instructed that if there were no such profits they should find for the defendant. The court defined, in substance, the preponderance of evidence to be that which satisfied the jury *to a reasonable certainty;* that, if they concluded "that any witness had testified wilfully false in regard to any matter material to the case, then they had a right to reject all of his evidence, where not corroborated by some credible evidence produced."

Numerous objections were taken to the admission and to the rejection of evidence, and such as are material are noticed in the opinion. The jury found for the plaintiffs in the sum of $950, and a motion for a new trial on the ground of the rulings of the court and that the verdict was contrary to evidence and was excessive was denied, and the defendant appealed from the judgment rendered on the verdict in favor of the plaintiffs.

For the appellant there was a brief by *Mills & Dahl,* and oral argument by *E. G. Mills.*

*Alexander Athey,* for the respondents.

PINNEY, J.  1. The instruction that, "if the greatest weight of evidence tends to establish the fact as claimed by the party upon whom the burden of proof rests, and you are satisfied thereby to a reasonable certainty of the existence of such fact, you should find in favor of such party in respect to such claim, otherwise against him," is not objectionable as laying down the rule applicable to criminal cases, requiring that the evidence shall be such as to satisfy the jury of the guilt of the defendant beyond reasonable doubt. When the plaintiff and defendant have

Allen and another vs. Murray.

both put in their evidence, the burden of proving his whole case by a preponderance of evidence in civil cases is on the party who had the burden in the beginning of the trial. *Powers v. Russell*, 13 Pick. 76; *Perley v. Perley*, 144 Mass. 104; *Phipps v. Mahon*, 141 Mass. 471; *Willett v. Rich*, 142 Mass. 356. If the plaintiff pleads in confession and avoidance, his burden of proof includes none of the allegations of the complaint. *Powers v. Silberstein*, 108 N. Y. 171. The expression "reasonable certainty" is not strictly accurate as a definition of the weight of evidence required, and may mean no more than that *quantum* of evidence which satisfies or convinces the mind of a reasonable person of the truth of a particular claim or contention. Possibly, however, it may mean more, and so be misleading. We think it better, in such cases, to stop with stating the usual rule that the party having the burden of proof must establish his case by a preponderance or the greatest weight of evidence. If the instruction is to be regarded as erroneous, the error was clearly prejudicial only to the plaintiffs, upon whom the burden of proof rested in all respects, except in relation to whether the plaintiffs stopped cutting by consent or agreement, and whether they acquiesced in the act of the defendant forbidding their further cutting of timber. The preponderance of evidence in respect to the points upon which the burden of proof was on the defendant was clearly and very decidedly against him, and it is plain that he was not injured by the instruction.

2. The instruction that, "if a witness had testified wilfully false in regard to any matter material to the case, the jury had a right, if they saw fit, to reject all of the evidence of such witness not corroborated by some credible evidence produced," is in accordance with the law as laid down in *Mercer v. Wright*, 3 Wis. 645, and was correct.

3. The evidence is clear and decisive that the defendant's agent in charge, on Sunday the 6th of March, 1892, forbade

the plaintiffs cutting any more timber on the land, and three days afterwards defendant refused to consent to their proceeding to perform the contract, and was guilty of a breach of the contract.   He assumed a right to put an end to the contract on the ground that, as he supposed, the logging season was substantially at an end, and that it had become impossible for the plaintiffs to perform their contract within the stipulated time, then forty days distant; but he misjudged in this respect, for the weather changed and the logging season continued until near the end of March.   It was properly submitted to the jury to find whether the plaintiffs were willing and able to perform and complete their contract according to its terms, and the jury found this issue in their favor.   The defendant, in stopping the work, took whatever risk there was in this respect on himself.   It was no defense to the action that the wrongful act of stopping the work occurred on Sunday, for we do not understand that the defendant can escape the consequences of his wrongful act, even though prohibited and made penal by statute.   The plaintiffs not only acted on this notice, and quit work, but three days after they asked the defendant's consent to proceed with their contract, but he reaffirmed his notice by refusing consent.   The claim that the plaintiffs informed the defendant that they could not carry out the contract, and that he took them at their word and forbade further cutting of timber, and that plaintiffs consented or acquiesced in the termination of the contract, is negatived by the verdict of the jury, and this is in accordance with the very great preponderance of evidence.

4. The rule of damages given in the charge to the jury is in conformity with the law established by several decisions of this court,— that the plaintiffs, having been prevented from fully performing the contract, were entitled to recover the profits which they would have realized by put-

ting in all the logs on the defendant's land according to the contract; "in other words, they might recover the difference between the contract price and what it would have cost them to have put in the remainder of the logs." *Salvo v. Duncan,* 49 Wis. 151, 155; *Wood v. Schettler,* 23 Wis. 501; *Corbett v. Anderson,* 85 Wis. 218, and cases cited. To this rule we adhere. The plaintiffs had made preparations for performing the entire contract by making roads, getting supplies and men, teams, etc., for that purpose, and their interest in the contract had thus been made more valuable. They had an undoubted right to the contract price as damages, less what it would have cost them to have completed the contract. What it had already cost them for the construction of roads for that purpose or otherwise was not material to this question, and evidence offered on this point was properly excluded. The plaintiffs received pay for the 58,000 feet they had already put in; and what it had cost to put in these logs, and what profit the plaintiffs made on them, was thus eliminated from the case, and had no relevancy to the question of damages. And so, also, the exclusion of evidence to show what the plaintiffs made under a second logging contract, made with Carmichael, during the same logging season, after the breach of the contract with the defendant, offered in reduction of damages; was correct. The contract was not one for personal services, and *non constat* but that the plaintiffs might have obtained means and resources with which to put in these logs for Carmichael, as well as to have performed their contract with the defendant.

5. The instruction on the subject of the allowance of interest from the date of suit by way of damages was permissive, and not mandatory, and was warranted by adjudicated cases. *Hinckley v. Beckwith,* 13 Wis. 37; *Vaughan v. Howe,* 20 Wis. 497; *Gammon v. Abrams,* 53 Wis. 323; *Tucker v. Grover,* 60 Wis. 245.

6. There was no error in the admission of evidence given by one of the plaintiffs that, with the crew they had and provisions and equipment, they could have put in that 1,000,000 feet from the time he stopped them up to the 28th of March. This was in the nature of expert evidence, and admissible (*Salvo v. Duncan*, 49 Wis. 157); and the testimony of Carney, a lumberman, that it would cost $1.50 per 1,000 to haul this pine, provided everything was as *Watterson* had testified, comes within the same category; and so as to what it was worth to supply men for putting in logs per 1,000.

7. The questions asked the witness Anderson as to what it cost him the next winter for supplies, and as to what it cost him to put in logs that winter, excepting supplies, were not relevant. The evidence wholly fails to show facts necessary to make such a comparison admissible, and the questions related not to any matter in question, but tended to raise collateral issues which would tend to confuse and complicate the case, instead of elucidating it. The evidence was properly restricted to the cost at the time when the contract required the work to be performed.

There is no ground for contending that the verdict is contrary to the evidence, or that the damages are excessive, and, though other questions were raised, we have considered all that appear to merit discussion. We have not been able to find any material error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.