CITY OF MILWAUKEE, Plaintiff, v. MILWAUKEE COUNTY, Defendant.    [Two Appeals.]

*February 2—March 5, 1965.*

For the plaintiff there was a brief by *John J. Fleming,* city attorney, and *John F. Kitzke,* assistant city attorney, and oral argument by *Mr. Kitzke.*

For the defendant there were briefs by *Robert P. Russell,* corporation counsel, and *James J. Bonifas,* assistant corporation counsel, and oral argument by *Mr. Bonifas.*

HALLOWS, J. In the construction of the statutory language the legislative intent should be sought from the language of the statute in relation to its scope, history, context, subject matter, and the object intended to be remedied or accomplished, *Scanlon v. Menasha* (1962), 16 Wis. (2d) 437, 114 N. W. (2d) 791, and when there are several statutes relating to the same subject matter they should be read together and harmonized, if possible, *Harris v. Halverson* (1927), 192 Wis. 71, 211 N. W. 295. This appeal deals with three statutes enacted at different times relating to the same subject, the cost of keeping Milwaukee city prisoners in Milwaukee county penal institutions.

Milwaukee, like other cities, has for many years exercised the power to enact municipal ordinances and to provide monetary forfeiture or fines for their violation and for failure to pay the forfeiture or fine to provide for imprisonment until such forfeiture is paid but not exceeding a designated number of days of confinement. The city of Milwaukee does not own

or operate any penal institution in which to keep its prisoners after judgment for failure to pay forfeitures. For many years under various statutory authority such prisoners have been kept either in the Milwaukee county jail or in its house of correction.

County jails were first required to be built and maintained at county expense by ch. 10, sec. 16, of the revised statutes of 1849. Ch. 153, sec. 2, of that statute provided "the expenses of keeping and maintaining" all prisoners were to be borne by the county from which the prisoner was taken. Milwaukee county was authorized by ch. 318, P. & L. Laws of 1855, to build a house of refuge, the predecessor of the house of correction, and sec. 6 of that chapter provided that the expenses of maintaining the institution including the cost of support of prisoners was to be paid by the county. The house of correction was established for the reformation and the employment of persons sentenced for confinement therein and includes the operation of a farm. A city prisoner in lieu of being committed to the Milwaukee county jail may under some circumstances be committed to the house of correction.

Prior to 1919 no statutory authority permitted Milwaukee county to charge the city of Milwaukee for the keep of city prisoners either in a county jail or in a house of correction. By ch. 351, Laws of 1919, sec. 56.18 (2) was created which provided that each city or village in Milwaukee county should pay $1.50 per week for each of its prisoners confined in the house of correction. Four years later by ch. 242, Laws of 1923, this section was amended to read substantially as it now does [1] and requires each city or village in Milwaukee

---

[1] "56.18 COMMITMENTS; MUNICIPAL PRISONERS; . . .

"(2) Each village or city in such county shall, at such times as shall be designated by the county board, pay to the county the actual and reasonable costs of maintenance, as determined by ordinance of the county board, of all persons confined in the house of correction for the violation of any of the ordinances of such city or village during the preceding year."

county to pay for the "actual and reasonable costs of maintenance" of its prisoners in the house of correction as determined by ordinance of the county board. This section is a part of the chapter on prison labor and relates only to the prisoners in the Milwaukee county house of correction.

Shortly after the repeal of prohibition in 1933, sec. 176.43 (1), Stats.,[2] was created. This section, a part of the chapter on intoxicating liquors, authorized cities to prescribe regulations for the sale of intoxicating liquors by ordinance not in conflict with state laws and provided that when a person was committed to the county jail or house of correction for the violation of such ordinance, "his board shall be paid by the municipality where such violation was committed." In 1953 sec. 66.12 (1) (b), now (c)[3] was created by ch. 448,

---

[2] 176.43 "MUNICIPAL AND STATE REGULATIONS; PENALTIES. (1) Any city, village or town may by ordinance prescribe additional regulations in or upon the sale of intoxicating liquor, not in conflict with the provisions of this chapter. Such ordinance may prescribe different penalties than those provided in this chapter, but no ordinance shall provide a greater penalty than the maximum allowed by law. The provisions of this chapter shall in no way affect the power of cities, villages and towns to enact zoning ordinances or to enforce zoning regulations now in force or hereinafter enacted. Whenever any person shall be committed to the county jail or house of correction for the violation of a municipal ordinance, his board shall be paid by the municipality where such violation was committed."

[3] 66.12 "ACTIONS FOR VIOLATION OF CITY OR VILLAGE REGULATIONS. (1) Collection of forfeitures and penalties.

"(c) In case of conviction the court shall enter judgment against the defendant for the costs of prosecution, and for the penalty or forfeiture, if any, and that he be imprisoned for such time, not exceeding 90 days, unless otherwise provided by the ordinance, resolution or bylaw, as the court deems fit unless the judgment is sooner paid. Such judgment or the imposition of any penalty or costs may be suspended or deferred for not more than 30 days in the discretion of the court. Prisoners confined in the county jail or in some other penal or correctional institution for violation of a city or village ordinance, resolution or bylaw shall be kept at the expense of the city or village."

Laws of 1953. This section, a part of the chapter on municipal law, applied to all cities and villages and provided that prisoners confined in the county jail or in some other penal or correctional institution for the violation of a city or village ordinance, resolution or bylaw, "shall be kept at the expense of the city or village." We thus have posed the question of whether the language referring to the keep of prisoners, "actual and reasonable costs of maintenance" in sec. 56.18 (2), "board" in sec. 176.43 (1), and "be kept at the expense of" in sec. 66.12 (1) (c) mean the same thing or carry different connotations and in either case, what meaning?

The dispute between the parties is not so much that these three statutes have radically different meanings taken separately as what they mean taken together. Chronologically, the language for imposing liability on the city for the actual and reasonable costs of maintaining city prisoners preceded the terms "his board" and "to be kept at the expense of." We find no reason why "his board" used in connection with intoxicating-liquor violators logically should have any different content or be less restrictive than the actual and reasonable costs of maintenance; both apply to the same prisoner in the house of correction and necessarily must be construed to mean the same. This construction is supported by the historical use of the two phrases. Likewise, the phrase "be kept at the expense of" covers the same prisoner in the house of correction and must be construed the same as "actual and reasonable costs of maintenance" in view of the other sections existing prior in time. The phrase would seem not to be used as much as a measure of liability as a designation of a liability. However, we consider its use under both aspects because it applies to prisoners in the county jail as well as those in the house of correction.

Commencing in 1928 for the house of correction and in 1939 for the county jail, Milwaukee county established a

weekly rate of $6 for prisoner keep. In 1955 the county established *per diem* charges based upon all accounting costs of operating and maintaining the house of correction and the county jail. These separate charges for each institution were determined annually in accordance with the operating costs for the penultimate year. The city was billed monthly and it paid these billings without protest until January 1, 1962.

The trial court in construing "actual and reasonable costs of maintenance," "to be kept at the expense of," and "board" held the language embraced only out-of-pocket expenses directly affecting prisoner keep and did not include, as claimed by the county, charges based on a cost-accounting share of salaries, heating, lighting, gas, water, insurance, supplies, capital construction, maintenance, and other items. These excluded charges included, among others, such items for the county jail as boiler insurance, general insurance, printing, stationery, charges made by other county departments for trucking, preparing, and packaging supplies furnished the jail, maintenance of a car assigned to the jail, household supplies, office supplies, athletic equipment used in the gymnasium by the sheriff's deputies assigned to the jail, machinery and equipment, such as typewriters, adding machines, and jurors' meals. In the itemization for the house of correction we find items including all salaries of employees, advertising of the sale of livestock, registration fees for livestock and veterinarian's fees, various types of insurance for cars and trucks, postage, printing and stationery, repairs and maintenance to buildings, including the barns, the hog house, the bull house, 23 chicken coops, and the superintendent's and farm superintendent's residences, and many other accounts referring to the operation of the farm run by the institution and to the buildings. The question is whether such items, which are directly referable to the maintenance of either the buildings constituting the jail or the house of correction or to the operation thereof as a jail, are to be

considered as actual and reasonable costs of maintaining or keeping the prisoners.

There is no prior case in Wisconsin construing the language of these three sections. There are cases construing related statutes which give some indication of the intent of the legislature in the use of the language under discussion. Historically, a county provided the jail as a building and the sheriff was in charge of operation and had custody of the prisoners. It was his duty to run a jail or place of safekeeping and he was reimbursed by the county for expenses as provided by the statutes.

In the early case of *Hartwell v. Supervisors of Waukesha County* (1877), 43 Wis. 311, the court held "the expense for maintaining" and "expenses for safekeeping" did not include the services or board of a deputy sheriff who acted as jailer so as to allow recovery therefor by the sheriff. The court considered the language "expenses for maintaining" to refer to the maintenance or necessary support but not personal services of a jailer or custodian. In *Bell v. Fond du Lac County* (1881), 53 Wis. 433, 434, 10 N. W. 522, the sheriff demanded $3.50 per week per prisoner from the county. The court held that the language in the statute, " 'all charges' for maintaining convicts" and " 'the expense' of maintaining" meant "what it would actually and necessarily cost the sheriff to furnish the board which he is required to furnish" and he was to be indemnified only for "actual charges or expense which he incurs in boarding or maintaining."

In the first case directly involving the question of recovery by a county against a municipality it was held that a county was chargeable for the board and laundry of prisoners and for the fees for discharge and admittance, and these expenses of keeping a prisoner could be recovered by the sheriff. *Nickell v. Waukesha County* (1885), 62 Wis. 469, 22 N. W. 737. This case was followed in *Waukesha County v. Village*

of *Waukesha* (1891), 78 Wis. 434, 47 N. W. 831. In *Parsons v. Waukesha County* (1892), 83 Wis. 288, 291, 53 N. W. 507, the court said ". . . 'the expenses for safekeeping' in sec. 4947, R. S., and the exception in the act of 1881 of 'compensation for keeping and maintaining prisoners in the common jail,' refer only to the same general subject, namely, the maintenance or necessary support and keeping of the prisoners." Where a sheriff could not produce actual accounts and bills he could not recover since he was entitled only to actual expenses in maintaining the prisoners. *Deissner v. Waukesha County* (1897), 95 Wis. 588, 70 N. W. 668.

These cases involving sheriffs necessarily are restricted to expenses involved directly in feeding and caring for prisoners on a day-to-day basis, items which might be said to be consumed in the use. Naturally they did not include the type of expenses claimed by Milwaukee county because the sheriff had no right or duty to make such expenditures as those items refer directly to the building as a jail and only indirectly to the prisoners. The jail as a building and its equipment were furnished and maintained at the expense of the county and for the sheriff's services as a custodian he received fees. This was well known when the legislature started to allocate costs between municipalities for the keep of their respective prisoners. Besides the sections under review, sec. 62.24 (2) (b), Stats., which does not apply to the city of Milwaukee by virtue of sec. 62.03, was created in 1935 and provided a city was liable for the keep of its prisoners in the county jail under the language "kept at expense of." This section has been interpreted by the attorney general to mean out-of-pocket expenses for food, medical care, laundry and like items and could not include a cost-accounting share of salaries, heat, light, gas, water, insurance, supplies, and like items. 43 Op. Atty. Gen. (1954), 41; 46 Op. Atty. Gen. (1957), 71. These opinions by analogy are noteworthy.

Nowhere in the history of this problem or in any of the statutes can we find any intent on the part of the legislature to include in the cost against the city of Milwaukee the total accounting costs for operating a jail or house of correction as contended for by the county. In this respect the county's argument must fail.

We note that the trial court rejected items 1, 2, and 3 for the county jail list relating to salaries and wages and insurance and social security thereon and the same items as item 1 in the list for the house of correction. Item 1 includes a chef, food supervisor, cooks and food-service workers as well as other personnel such as deputy sheriffs, matrons, administrative clerks, and typists. It seems to us that the cost of meals includes more than the cost of the raw food and includes the labor in preparing and serving food as a proper cost of maintenance. *Doty v. Sauk County* (1896), 93 Wis. 102, 67 N. W. 10. This item should be allowed in determining the *per diem* charges.

The county strenuously argues that its method of charging which permits all the accounting costs to be charged on a *per diem* basis is the only practical and equitable manner in which to determine maintenance because: (1) Such items constitute all maintenance costs, and (2) it is impossible to precisely determine costs attributable to each prisoner separately. We think it is fair and reasonable that a formula based upon the items allowed be used for each institution to determine the *per diem* cost of maintaining prisoners. Since this is an average per-day cost per prisoner, the county may apply this cost unit in full to the day of commitment and to the day of discharge. Any method of splitting a day is impractical and the result *de minimis*. The county also contends that because the incarceration of city prisoners is for the purpose of enforcing the payment of forfeitures and not as punishment for a crime, *Milwaukee v. Johnson* (1927), 192 Wis. 585, 213 N. W. 335, it should not be required to bear

part of the cost of such revenue-producing activities. This argument is, as well as others, better addressed to the legislature than to this court as a reason for changing what appears to be the legislature's intent. Inequitable results flowing from legislative enactments allocating the cost of governmental services between municipalities, even involving Milwaukee county, are not unknown, see *Wauwatosa v. Milwaukee County* (1963), 22 Wis. (2d) 184, 125 N. W. (2d) 386.

On its cross appeal the city of Milwaukee alleges the trial court was in error in holding it was estopped from claiming overpayments for the years 1956 to 1961 inclusive. The trial court held payments were voluntarily made and by its action the city had estopped itself. The county argues a voluntary overpayment made by the city to a municipality cannot be recovered, relying on 17 McQuillin, Mun. Corp. (3d ed.), p. 305, sec. 49.62, and on *City of High Point v. Duke Power Co.* (4th Cir. 1941), 120 Fed. (2d) 866; *Union Properties v. Cleveland* (1943), 142 Ohio St. 358, 52 N. E. (2d) 335; *Wm. Sellers & Co. v. Clarke-Harrison, Inc.* (1946), 354 Pa. 109, 46 Atl. (2d) 497, and on 70 C. J. S., Payment, p. 347, sec. 139. None of these authorities are controlling.

The McQuillin reference is to the effect that a payment made to a municipal corporation is ordinarily not recoverable. One sentence later, McQuillin states (p. 306) : "On the other hand, although the authorities are by no means uniform, the prevailing view seems to be that payments made by a municipality under mistake of law may be recovered." In the *City of High Point Case,* recovery was denied a city but it was expressly pointed out that the overpayment was made by the city in the course of engaging in a proprietary function. *Union Properties,* involved not a payment by a municipality but by a private individual. *Wm. Sellers &*

*Co.,* involved a payment by a private individual. The Corpus Juris Secondum reference stated the general rule that voluntary payments cannot be. recovered by private individuals or private corporations from a public corporation. The same section states a wrongful payment made by a public officer without authority does not constitute a voluntary payment by the municipality and may be recovered. The exception to the general rule denying recovery is, "Generally payments made by public officers under a mistake of law may be recovered back, and an action may be maintained to recover public funds paid without authority, although paid under a mistake of law, regardless of the good faith of the payee." 70 C. J. S., Payment, p. 364, sec. 156.

The rule governing restitution where there has been a payment or satisfaction of a nonexistent obligation, such as the overpayment in this case, is stated in Restatement, Restitution, p. 189, sec. 46, as follows : "A person who has conferred a benefit upon another because of an erroneous belief induced by a mistake of law that he is under a duty so to do, is entitled to restitution as though the mistake were one of fact if : (a) the benefit was conferred by a State or a subdivision thereof, or . . . ." One of the illustrations given is "County X, owing to a misinterpretation of a statute by its council, pays to town Y more than its share of tax money. The county is entitled to restitution." This rule has been followed when the payor and the payee both are municipalities. *Lamar TP. v. Lamar* (1914), 261 Mo. 318, 169 S. W. 12; *Bismarck v. Burleigh County* (1922), 49 N. D. 205, 190 N. W. 811; *Gilpatric v. Hartford* (1923), 98 Conn. 471, 120 Atl. 317; and *Cayuga County v. State* (1920), 112 Misc. 517, 183 N. Y. Supp. 646. Wisconsin has no case strictly in point but in two cases municipalities have recovered moneys paid under mistake. In one against a municipality, see *St. Croix County v. Webster* (1901), 111 Wis.

270, 87 N. W. 302; *Milwaukee v. Milwaukee County* (1902), 114 Wis. 374, 90 N. W. 447.

But it is claimed by Milwaukee county and was found by the trial judge that the city of Milwaukee by its course of conduct was estopped from asserting such cause of action. In Wisconsin a municipal body is not immune from the application of the doctrine of estoppel and it makes no difference whether the activities are governmental, as here, or proprietary. *St. Croix County v. Webster, supra; Eau Claire Dells Improvement Co. v. Eau Claire* (1920), 172 Wis. 240, 179 N. W. 2; *Milwaukee County v. Badger Chair & Furniture Co.* (1936), 223 Wis. 118, 269 N. W. 659; *Park Bldg. Corp. v. Industrial Comm.* (1960), 9 Wis. (2d) 78, 100 N. W. (2d) 571; *Lang v. Cumberland* (1962), 18 Wis. (2d) 157, 118 N. W. (2d) 114. An estoppel *in pais* consists of action or nonaction on the part of the one against whom the estoppel is asserted which induces reliance thereon by another, either in the form of action or nonaction, to his detriment. *Dixon v. Davidson* (1930), 202 Wis. 19, 231 N. W. 276; *Callaway v. Evanson* (1956), 272 Wis. 251, 75 N. W. (2d) 456; *Eau Claire Dells Improvement Co. v. Eau Claire, supra.*

Here, the county board passed resolutions establishing the *per diem* rates for the cost of keeping prisoners at the house of correction and at the county jail and billed the city for its prisoners. Over the years the city of Milwaukee paid such bills. The only affirmative conduct which can be charged to the city of Milwaukee is the act of payment; the only omission, its failure to object to the amount of the bills. Neither the city nor any of its officers did anything to induce the county to make or to change its annual *per diem* rate. By statute, the county was required to fix the actual and reasonable costs of maintenance by ordinance. The amount of the *per diem* charges was solely determined by the county. Be-

cause the city did not complain sooner is hardly an argument why Milwaukee county continued to overcharge the city. The county strenuously argues on appeal that there was no overcharging and it was justified in making the charges it made. We do not find any affirmative act or omission on the part of the city or any reliance upon an act or omission of the city of Milwaukee or any change in position of Milwaukee county.

The declaratory judgment in its paragraph 1 dismissed the complaint of the city of Milwaukee on its merits. This procedure is not recommended. The declaratory judgment should declare the rights of the parties and if adverse to the plaintiff it is incongruous to dismiss the complaint asking for the declaration. *Liddicoat v. Kenosha City Board of Education* (1962), 17 Wis. (2d) 400, 117 N. W. (2d) 369. It is apparent that the declaratory judgment must be reversed as to the dismissal and modified to include food-labor costs in the items of costs of maintenance, and otherwise, affirmed.

*By the Court.*—Paragraph 1 of the judgment dismissing the complaint of the city of Milwaukee on its merits is reversed; the city is entitled to recover its overpayments for the years 1956 to 1961 inclusive; paragraph 5 of the judgment is modified to include in the out-of-pocket expense directly affecting prisoners' keep in addition to those items listed in paragraph 13 of the trial court's findings the items relating to labor costs for preparing and serving food, such as chef, food supervisor, cooks, and service-food workers referred to in items 1, 2, and 3 relating to county jail and item 1 relating to the house of correction in the description of items supplementing Exhibits 2 and 3 of the plaintiff's complaint; the county of Milwaukee may determine the liability of the city of Milwaukee under secs. 56.18 (2), 176.43 (1), and 66.12 (1) (c), Stats., on a *per diem* basis by using in its accounting formula only such items of expense as

allowed by the trial court and as herein modified; in applying said formula the county need not prorate the *per diem* charge to portions of a day; in all other respects the declaratory judgment is affirmed; costs on this appeal are not allowed to either party.