HANZ TRUCKING, INC., Respondent, v. HARRIS BROTHERS COMPANY, Crestline Division, Appellant.

*November 2—December 3, 1965.*

256

258

For the appellant there was a brief by *Smith, Puchner, Tinkham & Smith* of Wausau, and oral argument by *Richard P. Tinkham.*

For the respondent there was a brief by *Crooks & Crooks* of Wausau, and oral argument by *Clayton J. Crooks.*

BEILFUSS, J.  The issues raised are as follows:

(1)  Is the minimum mileage provision of the contract ambiguous?

(2)  Did retention of the check constitute an accord and satisfaction?

(3)  Did the failure of plaintiff to bill on a monthly minimum basis constitute either waiver or estoppel?

(4)  Has plaintiff established damages awarded by the trial court?

The trial court permitted parol testimony to be received in evidence at the trial, over the objection of Hanz, as an aid in interpreting and construing the disputed minimum mileage provision of the contract.  The disputed language is "subject to a minimum of four thousand five hundred (4500) miles per month."  (The 1962 contract provided for 5,500 miles per month.)

While there may be some question as to whether the language of the challenged clause, given its common and ordinary meaning, can admit of more than one interpretation,[1] the trial court did receive the offered parol testimony and then found no ambiguity existed. The respondent Hanz does not on appeal challenge the trial court ruling admitting the parol evidence but contends that the finding of no ambiguity by the trial court is not against the great weight and clear preponderance of the evidence and cannot, therefore, be disturbed on appeal.

We deem the trial court properly received the parol testimony as an aid in determining whether ambiguity existed in the language of the contract.

"3 Williston, Contracts (rev. ed.), pp. 1807, 1808, sec. 629, suggests that the test, of whether a written contract is so unambiguous as not to render admissible any testimony of surrounding circumstances, is dependent on whether the words used are so clear that the offered evidence 'would not persuade any reasonable man that the writing meant anything other than the normal meaning of its words would indicate.' The author quotes with approval the following statement made by Judge LEARNED HAND in *Eustis Mining Co. v. Beer, Sondheimer & Co.* (D. C. 1917), 239 Fed. 976, 985:

" 'All the attendant facts constituting the setting of a contract are admissible, so long as they are helpful; the extent of their assistance depends upon the different meanings which the language itself will let in. Hence we may say, truly perhaps, that, if the language is not ambiguous, no evidence is admissible, meaning no more than that it could not control the sense, if we did let it in; indeed, it might "contradict" the contract—that is, the actual words should be remembered to have a higher probative value, when explicit, than can safely be drawn

---

[1] ". . . where the terms of a contract are plain and unambiguous, the duty of the court is to construe it as it stands, giving effect to the plain meaning of the language used, even though the parties may have placed a different construction on it. [Cases cited.]" *State ex rel. Siciliano v. Johnson* (1963), 21 Wis. (2d) 482, 487, 124 N. W. (2d) 624.

by inference from surroundings. Yet, as all language will bear some different meanings, some evidence is always admissible; the line of exclusion depends on how far the words will stretch, and how alien is the intent they are asked to include.'

"Professor Corbin, in his recent excellent work on the law of contracts, states (3 Corbin, Contracts, p. 70, sec. 542) :

" 'There are, indeed, a good many cases holding that the words of a writing are too "plain and clear" to justify the admission of parol evidence as to their interpretation. In other cases, it is said that such testimony is admissible only when the words of the writing are themselves "ambiguous." *Such statements assume a uniformity and certainty in the meaning of language that do not in fact exist; they should be subjected to constant attack and disapproval.'* (Emphasis supplied.)

"Among the surrounding circumstances that are admissible for the purpose of interpreting the language of a contract are the *'acts and statements of the parties antecedent to and contemporaneous with the making of the contract.'* 3 Corbin, Contracts, p. 72, sec. 543." *Georgiades v. Glickman* (1956), 272 Wis. 257, 264, 265, 75 N. W. (2d) 573.[2]

In the instant case the parol testimony dealt primarily with acts and statements antecedent to and contemporaneous with the making of the 1962 and 1963 contracts.

The trial court considered the language of the contract, namely the minimum miles "per month" and the testimony offered by both sides as to what they understood and agreed upon, and the fact that Hanz had not billed Crestline on a minimum monthly basis. The testimony was in conflict in some respects and more than one inference could be drawn from some of the undisputed facts. In the memorandum opinion filed by the trial judge, he stated: "The court would like to point out fur-

---

[2] Also see *Milwaukee Cold Storage Co. v. York Corp.* (1958), 3 Wis. (2d) 13, 25, 87 N. W. (2d) 505; and *Cutler-Hammer, Inc., v. Industrial Comm.* (1961), 13 Wis. (2d) 618, 625, 109 N. W. (2d) 468.

ther that it has re-read the testimony of both Mr. Hamers and Mr. Kabella, and save for in one or two instances, the court believes that although these men may have been of the impression that the agreement should be computed on an annual basis, the court does not believe that this was definitely conveyed to or agreed upon by the plaintiff, as is borne out by their testimony in this regard. The court felt Mr. Kabella to have been somewhat evasive in his testimony concerning whether or not there actually was conversation between he and Hanz's as to how the rental should be computed." The court concluded: ". . . this court believes that the proper interpretation of the agreement is that the agreement means just what it says, that the miles should be computed on a monthly basis and that if the vehicles are not driven 7,200 miles per month, that the plaintiff should be paid for 7,200 miles at 22¢ per mile per month."

The weight of the testimony and the credibility of the witness are primarily for the trial court; further, where more than one reasonable inference can be drawn from the credible evidence we must accept the one drawn by the trier of the fact.

We conclude that the trial court's finding that Hanz had not agreed to an annual minimum mileage and that the contract entered into by the parties providing for monthly minimum mileage "means just what it says," are not against the great weight and clear preponderance of the credible evidence and cannot, therefore, be set aside upon appellate review.

Crestline contends that Hanz is not entitled to a recovery by virtue of the doctrine of accord and satisfaction. After Crestline gave notice in April of 1964 that it would not renew that contract, Hanz billed Crestline for the amounts due under the 1962 and 1963 contracts, including monthly minimum charges over and above actual mileage for four months for each year covered by the 1962 and 1963 contracts. Crestline deducted the amounts

claimed for more than the actual mileage and sent Hanz a check with a notation that it was payment in full. This check was dated June 26, 1964. Hanz received the check and held it through the time of suit, August 13, 1964, the time of trial, December 11, 1964, and it remains uncashed and part of the record at this time.

"A creditor to whom remittance is made as payment in full of an unliquidated or disputed claim has the option either of accepting it upon the condition on which it was sent or of rejecting it, and if it clearly appears that the remittance was sent upon the condition that it be accepted in full satisfaction, then failure to reject it will result in an accord and satisfaction." 1 Am. Jur. (2d), Accord and Satisfaction, p. 315, sec. 18.

So far as holding a check is concerned, it is said:

"Where a creditor receives a check from his debtor containing the words 'payment in full,' 'final settlement,' or other words of similar import, it is his duty to repudiate the offer and return the check or money remitted within a reasonable time after it is received if he does not care to receive it in full discharge of the indebtedness." 1 Am. Jur. (2d), Accord and Satisfaction, p. 321, sec. 23. See also 6 Williston, Contracts (rev. ed.), pp. 5213–5216, sec. 1854.

Anno. 13 A. L. R. (2d) 736, considers cases where a check is received and not cashed or otherwise used. Cases holding that retention of a check for a particular length of time is unreasonable are: *Curran v. Bray Wood Heel Co., Inc.* (1949), 116 Vt. 21, 68 Atl. (2d) 712 [sixteen months before suit and three months after]; *Seidman v. Chicago Eye Shield Co.* (1932), 267 Ill. App. 77 [over six years]; *Day-Luellwitz Lumber Co. v. Serrell* (1913), 177 Ill. App. 30 [bank draft held three and one-half months]; *Donovan v. Maloney* (1912), 26 Del. (3 Boyce) 453, 84 Atl. 1032 [six months]; *Warren v. New York Life Ins. Co.* (1936), 40 N. M. 253, 58 Pac. (2d) 1175 [six months]; *Bloomquist v. Johnson* (1903), 107 Ill. App. 154 [held a "few weeks"]; *Baggett v. Chavous* (1963),

107 Ga. App. 642, 131 S. E. (2d) 109 [twenty-two months].

Cases which have held the retention not unreasonable or for the jury are: *Siegel v. Cohen* (1918), 210 Ill. App. 338 [twelve days]; *Patten v. Lynett* (1909), 133 App. Div. 764, 118 N. Y. Supp. 185 [one check about a month and another about six weeks]; *American Nat. Bank v. Bradford* (1945), 28 Tenn. App. 239, 188 S. W. (2d) 971 [three months]; *Meier v. Texas Co.* (D. C. Pa. 1958), 168 Fed. Supp. 119 [seven months]; *Chesapeake Industries v. Brandt* (1954), 137 N. Y. Supp. (2d) 195 [five months].

One Wisconsin case, *Frank v. Frost* (1919), 170 Wis. 353, 174 N. W. 911, held that retention of a check three months before tendering it back did not constitute an accord and satisfaction. On the basis of these cases it appears that holding a check from June 26th to August 13th, or even until December 11th, would not constitute an unreasonable time as a matter of law. Once suit was started on August 13th, it became clear that Hanz had not accepted the check on the terms under which it was presented. Thus, for purposes of this doctrine, Hanz has held the check only about six weeks. Thus we agree that retention of the uncashed check under the circumstances of this case did not constitute an accord and satisfaction.

Crestline next contends that "waiver and estoppel now prevents Hanz from claiming minimum mileage on a month by month basis."

" 'Waiver' is defined as voluntary and intentional relinquishment of a known right. As said in *Nolop v. Spettel* (1954), 267 Wis. 245, 249, 64 N. W. (2d) 859:

" 'A waiver is the intentional relinquishment of a known right.' *Swedish American Nat. Bank v. Koebernick*, 136 Wis. 473, 479, 117 N. W. 1020. 'Since an intention to relinquish an existing right or advantage is generally regarded as an essential of a waiver, it follows that it must be shown by the party claiming a waiver that the person against whom the waiver is asserted had

at the time knowledge, actual or constructive, of the existence of his rights or of the facts upon which they depended. Ignorance of a material fact negatives a waiver. Waiver cannot be established by a consent given under a mistake of fact.' 56 Am. Jur., Waiver, p. 114, sec. 14." *Davies v. J. D. Wilson Co.* (1957), 1 Wis. (2d) 443, 466, 467, 85 N. W. (2d) 459.

In *Nelson v. Caddo-Texas Oil Lands Co.* (1922), 176 Wis. 327, 329, 186 N. W. 155, the court said:

". . . Intent to waive is an essential element of waiver. While the intent to waive may be inferred as a matter of law from the conduct of the parties *(Pabst B. Co. v. Milwaukee,* 126 Wis. 110, 117, 105 N. W. 563), it is to be determined as a question of fact where the inference does not conclusively arise as a matter of law. *Robinson v. Pennsylvania F. Ins. Co.* 90 Me. 385, 38 Atl. 320; *Fishback v. Van Dusen,* 33 Minn. 111, 22 N. W. 244."

It appears without dispute that Hanz had not billed Crestline for minimum monthly miles over and above actual miles prior to the notice terminating the contract. Does this failure constitute a waiver; is it a voluntary and intentional relinquishment of a known right?

Intention to relinquish the right is an essential element of waiver. The trial court in concluding the contract was not ambiguous found that Hanz had not agreed to an annual minimum mileage and that the parties had agreed to a monthly minimum mileage. The claims for minimum monthly mileage charges in this action are limited to four months in each of the 1962 and 1963 contract years. Any delinquent monthly minimums for the years 1959 through 1961 were foregone by the agreement of the parties prior to the execution of the 1962 contract. The trial court found in substance that Hanz did not in fact ever intend to relinquish his right to claim the minimums for 1962 and 1963. This finding is supported by the testimony of Hanz and the undisputed fact that the monthly minimums of 7,200 miles for 1959–1961 contracts were reduced to 5,500 and 4,500 miles per month for the years

1962 and 1963. Again we cannot conclude this finding is against the great weight and clear preponderance of the evidence and consequently cannot say there was a waiver as a matter of law.

A more troublesome problem is the contention of estoppel.

While the doctrines of waiver and estoppel lend themselves to separate definitions, because some of the same facts may affect both doctrines, the distinction between the two is sometimes difficult to demonstrate. The difficulty is pointed out in *Davies v. J. D. Wilson Co.*, *supra*, at page 469:

"31 C. J. S., Estoppel, p. 245, sec. 61b, points out:
" 'Waiver and estoppel or estoppel *in pais* are closely related; the line of demarcation between them is said to be very slight, since both partake of somewhat the same elements and ask essentially the same relief; and the terms are frequently and loosely used as convertible, especially where waivers implied, and estoppels arising, from conduct are involved, the dividing line being very shadowy in such cases and it being often a difficult question to determine just where the doctrine of implied waiver ends and that of estoppel begins. Where the waiver relied on is constructive, or merely implied from the conduct of a party, irrespective of what his actual intention may have been, it is at least questionable if there are not present some of the elements of estoppel. It has been declared on the one hand, that estoppel is a species of waiver, and, on the other hand, that waiver belongs to the family, and, according to the judicial decisions on the subject, is in the nature, of estoppel.' "

In the recent case of *City of Milwaukee v. Milwaukee County* (1965), 27 Wis. (2d) 53, 66, 133 N. W. (2d) 393, we defined estoppel *in pais* as follows:

". . . An estoppel *in pais* consists of action or nonaction on the part of the one against whom the estoppel is asserted which induces reliance thereon by another, either in the form of action or nonaction, to his detriment. *Dixon v. Davidson* (1930), 202 Wis. 19, 231 N. W. 276; *Callaway v. Evanson* (1956), 272 Wis. 251, 75 N. W. (2d)

456; *Eau Claire Dells Improvement Co. v. Eau Claire, supra."*

Kabella, for Crestline, testified that it was induced to enter into the contracts of 1962 and 1963 in reliance upon the fact that Hanz had not billed Crestline for monthly minimum mileage and that Crestline would have, but did not exercise its right to terminate the contract with a thirty-day notice, as it had a right to do, because it relied upon Hanz's course of conduct in not billing on a monthly minimum basis. Hanz countered this testimony by stating that the substantial reduction from 7,200 miles to 5,500 miles in 1962, and further to 4,500 miles in 1963, was done at the insistence of Crestline and was understood by Hanz as an acknowledgment by Crestline that monthly minimums were agreed to.

The trial court, in passing upon the testimony of Kabella, found it was somewhat "evasive" as to whether there was a conversation between Hanz and Kabella on how the rental should be computed. As to the factual issue of reliance, the trial court felt it was significant that the release of the 1959–1961 agreements was entered into at the same time as the 1962 agreement with a substantial reduction in monthly minimum miles; and that in both 1962 and 1963, when reductions in monthly mileage were inserted in the contracts, Crestline could have insisted on an annual minimum mileage if that was in fact the agreement. A further fact alluded to by the trial court was that under both the 1962 and 1963 contracts there were only four months of each year wherein the billing was less than the contract minimum. Under these facts and findings by the trial court we cannot conclude as a matter of law that the conduct of Hanz was inconsistent with terms of the contract to such a degree as to compel a finding that Crestline reasonably relied upon Hanz's conduct to its detriment and that Hanz should not be permitted by equitable considerations to assert its contract rights. More simply stated, the evidence will permit the

finding that Crestline did not have reasonable grounds of reliance that the terms of the contract would not be enforced.

The final contention of Crestline is that the proof in the record does not support any damage award and that Hanz's complaint should be dismissed. The court awarded damages at 22 cents per mile upon minimum monthly mileage provisions of the contract pursuant to the demand of the complaint.

The contract, however, provides that Hanz was to furnish the gas and oil, and the maintenance and repair for the vehicle. The only testimony as to damages was by Hanz to the effect that it cost 21 cents per mile for gas, oil, repair, and maintenance, including insurance and depreciation. The contract does not provide for liquidated damages or separate means of calculating damages for mileage less than the minimums provided by the contracts.

Obviously Hanz was not required to expend funds for gas and oil and probably maintenance and repair when the vehicle was not used.

Contract damages are to be compensatory. *Dehnart v. Waukesha Brewing Co.* (1963), 21 Wis. (2d) 583, 124 N. W. (2d) 664; 5 Williston, Contracts (rev. ed.), p. 3763, sec. 1338. A party is not entitled to be placed in a better position because of a breach than he would have if the contract had been performed. *Dehnart, supra.* In this case respondent is entitled to the benefit of his bargain, but that is not 22 cents per mile. His expenses had to come out of this 22 cents and should be deducted. See *Schubert v. Midwest Broadcasting Co.* (1957), 1 Wis. (2d) 497, 502, 85 N. W. (2d) 449; *Allen v. Murray* (1894), 87 Wis. 41, 57 N. W. 979; *Walsh v. Myers* (1896), 92 Wis. 397, 66 N. W. 250; *Spafford v. McNally* (1907), 130 Wis. 537, 110 N. W. 387. In *Schubert v. Midwest Broadcasting Co., supra,* at pages 502, 503, we stated:

". . . Plaintiff's damages are that sum less any savings accruing to plaintiff because he was not able to complete the contract. The burden of proof was upon the plaintiff to establish his loss. We feel there should be few exceptions to this general rule because only the plaintiff has the knowledge and the figures to prove that saving. In Restatement, 1 Contracts, p. 515, sec. 331, and p. 533, sec. 335, is the general rule for establishing the amount of damages. These sections read as follows:

" '(1) Damages are recoverable for losses caused or for profits and other gains prevented by the breach only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty.' (Sec. 331.)

" 'If the defendant's breach of contract saves expense to the plaintiff by discharging his duty of rendering a performance in return or by excusing him from the performance of a condition precedent, the amount of this saving is deducted from the damages that would otherwise be recoverable.' (Sec. 335.)"

This is also the rule of Williston:

"Compensation involves not only assessment of gains prevented by the breach but also of losses ensuing which would not have occurred had the contract been performed. From these must be deducted any saving to the plaintiff due to the non-performance of the contract. . . ." 5 Williston, Contracts (rev. ed.), p. 3764, sec. 1338.

The plaintiff Hanz has the burden to prove his compensatory damages. It is clear from the record that this issue has not been tried. We therefore reverse under sec. 251.09, Stats., and order a new trial limited to the issue of damages.

*By the Court.*—Judgment reversed, and cause remanded for a new trial on the issue of damages.

WILKIE, J. (*dissenting*). I respectfully dissent because I would dismiss the complaint on the ground that Hanz is estopped to assert its claim for truck rent as against Crestline. As stated in the majority opinion, estoppel *in pais* was defined recently by the court as set

forth in *City of Milwaukee v. Milwaukee County* [1] as follows:

> "An estoppel *in pais* consists of action or nonaction on the part of the one against whom the estoppel is asserted which induces reliance thereon by another, either in the form of action or nonaction, to his detriment."

In essence, I believe that Hanz is estopped here because of its "action or nonaction" in sending Crestline bills from 1959 through May, 1964, for actual monthly mileage rather than minimum monthly mileage, which induced "reliance" thereon by Crestline to its "detriment," shown by payment of each bill as submitted and by continual renewal of the contract and by Crestline's failure to terminate, as it would have done if rentals were based on minimum monthly amounts. The first bill sent by Hanz on the basis of minimum monthly mileage was sent to Crestline after Hanz received a notice of termination of the lease on April 22, 1964.

Although there is no specific finding of fact by the trial court on the question of estoppel, in its memorandum decision the court states that, in view of the fact that as the years passed under the contract "the parties saw fit to reduce the number of miles required per month from 7,200 all the way down to 4,500 . . . these men could not have understood this to mean that they were not being held responsible for these miles on a monthly basis, since it would have been just as easy to incorporate a yearly average figure and change the contract in that respect if it had not been meant to say just what was said in the contract and to perform it in the manner in which it so states." Thus, the court engaged in speculation about what the parties *might* have done, whereas the actual record of what *was* done actually supports only one conclusion, that there was an estoppel of Hanz.

[1] (1965), 27 Wis. (2d) 53, 66, 133 N. W. (2d) 393.

Until the termination of the agreement, Hanz never submitted a monthly bill based on the monthly minimum that it claimed was due. Instead, with each month there was a bill sent by Hanz to Crestline for the actual miles used in that month. It may have been that there were only a few months when the billing on the actual basis was really less than the contract minimum as viewed by Hanz. Nevertheless the bills actually sent out were inconsistent with the terms of the contract as now contended for by Hanz. For over five years Crestline continued as the truck lessee. It paid each bill as submitted. It terminated the contract on April 22, 1964, and as of June 16, 1964, Crestline received its first bill computed on the basis of guaranteed monthly requirements rather than on the basis previously billed. This whole course of conduct on the part of Crestline constitutes sufficient reliance on Hanz's conduct, which redounded to the detriment of Crestline to such extent that it could validly assert estoppel as against Hanz in this present attempt to collect rentals on the basis of a contract construction that was never reflected in its billings to Crestline.

I would hold, as a matter of law, that Hanz was estopped from asserting its claim and necessarily this would mean that the judgment below should be reversed and the plaintiff's complaint dismissed.

I am authorized to state that Mr. Chief Justice CURRIE and Mr. Justice FAIRCHILD join in this dissent.