PAUL L. BROWN, Secretary, State Building Commission
You have requested my opinion on the following question:
"In view of the manner in which the Auxilliary Projects were approved, what kind of a list of projects is valid? How would we handle an emergency project such as a power failure if such a repair project never appeared on any list?" *Page 333 
The answer to this question basically involves the question as to the use of building trust funds by the State Building Commission.
The state of Wisconsin finds itself between two conflicting philosophies in the operation of its building program. On the one hand, the legislature has clearly indicated its intent to control the program by expressly and specifically passing upon each particular project within the building program. On the other hand, the Building Commission and the Department of Administration are faced with the very real and practical problem of dealing with the building program and the efficient management, operation and maintenance of facilities costing hundreds of millions of dollars on a day-to-day basis. In an opinion to Wayne F. McGown, Deputy Secretary of the Department of Administration, under date of July 5, 1972, I analyzed the historical development of the state building program and attempted to illustrate the problems caused by changing from a rather loose building program to a very stringent program, with little effort to harmonize the existing statutory building program with the newly enacted program. I further stated in the opinion that, "as a matter of law, these statutes all concern the same general subject matter and, therefore, must be construed together and harmonized if at all possible, City of Milwaukee v.Milwaukee County (1965), 27 Wis.2d 53."
The expenditure of building trust funds is governed by secs.13.48 and 20.924, Stats.
In answering the question as to how and under what conditions building trust funds may be used, I will attempt to set forth broad categories of work and discuss the use of such funds under each category.
MAINTENANCE
Section 13.48 (1), Stats., provides in part:
"***Projects in such long-range program shall include the necessary lands, new buildings, and all facilities and equipment required and also the remodeling, reconstruction and re-equipping of existing buildings and facilities, but shall not include ordinary maintenance." *Page 334 
The term "ordinary maintenance" as used in the above statute must, of course, be defined. Generally speaking, "maintenance" means "the upkeep of property or equipment,"[1] or the upkeep or preservation of the condition of property.[2] Maintenance includes repair and, in effect, contemplates keeping the property in a fixed condition and does not include renovation or improvement.[3]
It is our understanding various state agencies have an appropriation in their respective budgets to cover maintenance and repair of facilities under their jurisdiction. If an emergency situation should develop as described in your question, it is the responsibility of the particular agency to provide the funds for the necessary repairs. If sufficient funds are not available within the particular agency budget, recourse is to the Board on Government Operations and not the Building Trust Fund. We understand that in the past building trust funds may have been resorted to for maintenance projects. This practice, if it has, in fact, occurred, would be in violation of legislative intent to have the maintenance of state facilities reflected in individual state agency budgets.
The long-range building program as reported to the legislature under the provisions of sec. 13.48, Stats., generally does not contemplate maintenance, and accordingly funds by and large have not been appropriated to the Building Trust Fund to cover the cost of such work. The 1971-1973 report to the legislature does contain numerous references to recommended repair work. Whether this work really constitutes strictly repair work or is in the nature of remodeling is not always clear. In future reports to the legislature, it is my opinion that care be exercised so as not to use building trust funds for projects that are clearly in the nature of maintenance or repair.
It is difficult to determine the responsibility of the Building Commission in the matter of repairs to state buildings. Under sec. 13.48 (10), Stats., the Commission has the responsibility to pass *Page 335 
on all contracts for construction and reconstruction as well as contracts for remodeling and additions which exceed $15,000 irrespective of the source of funds. As building trust funds may not be used for repair work, in my opinion, the statutory language "irrespective of the source of the funds" could be interpreted to include those funds appropriated to the individual state agencies for repair work if the term "repair" falls within the meaning of the words "construction" or "reconstruction." It seems to me that in common parlance whether a contractor is engaged in new construction or repair work he is nevertheless engaged in construction. The generic terms "construction" or "reconstruction" do not, in and of themselves, preclude repair work.
Further, it is my understanding that the Commission has, in the past, interpreted the language of this subsection to include passing on contractual repairs which exceed $15,000.
It is my opinion the Building Commission has the responsibility to pass on construction repair contracts that exceed $15,000 under the provision of sec. 13.48 (10), Stats.
It does not appear there was any attempt by the legislature to restrict the State Building Commission in exercising its discretion in respect to maintenance and repairs. The only restriction the legislature has imposed is found in the limits of the appropriation to the particular state agency involved.
Thus in summation, it is my opinion building trust funds are not generally available for maintenance or repairs; such costs are to be covered by the appropriation to the particular state agency involved. The legislature placed no limits on Building Commission action in approving maintenance or repair work; however, agency budgets obviously cannot be exceeded in this regard.
MAJOR LOSSES
If the state of Wisconsin should lose a building by fire or some other disaster, the Building Commission could not authorize construction of a new facility to replace the lost facility, even *Page 336 
though it would be funded through ch. 210, Stats., State Insurance Fund. Section 20.924 (1) (a), Stats., which reads as follows, precludes construction to replace a destroyed facility:
"20.924 Building program execution. (1) In supervising and authorizing the implementation of the state building program under the appropriation authority of s. 20.710, the building commission:
"(a) Shall authorize the design and construction of any building, structure or facility costing in excess of $250,000 regardless of funding source, only if that project is enumerated in the authorized state building program."
ENUMERATED PROJECTS
The legislature appropriated $23,541,400 in 1969 and $18,323,200 in 1971 to the Building Trust Fund.[4] To a large extent, these appropriations are specifically earmarked for particular projects. It is implicit, in the law, that Building Commission approval is necessary before these projects may be built. However, there is nothing in the law that authorizes the use of these project funds for any other use except as hereinafter discussed. The Building Commission may, to a limited extent, use these earmarked funds for another enumerated project by changing the scope of the project or the budget. Such use is restricted to an intra-department basis under the provisions of sec. 20.924 (1) (d), Stats. These funds may not be used for unauthorized projects. The use of legislatively earmarked funds for an unauthorized project would violate the language of sec.20.924 (1) (d), Stats., which allows "limited changes." *Page 337 
AUXILIARY PROJECTS
The 1971 Legislature appropriated $18,323,200 to the Building Trust Fund, sec. 20.710 (2) (f), ch. 125, Laws of 1971. Of this amount, approximately 5.8 million was specifically earmarked by sec. 518 of ch. 125, Laws of 1971, for particular projects. The balance, or approximately 12.5 million, was appropriated under the term "auxiliary projects" with specific amounts to particular state agencies. Although the auxiliary projects were not enumerated in sec. 518 of the budget, these appropriations were based on the report prepared pursuant to the provisions of sec.13.48 (2) (e) 1, Stats. Under this section, the report was either made a part of the budget or accompanied the same. An examination of the report shows that auxiliary projects were listed and described on a project-by-project basis. Further examination of this report shows, in all cases but one, the estimated cost of the enumerated auxiliary projects exceeded the amounts actually appropriated by the legislature in sec. 518 of the budget.[5]
One cannot ignore the fact that this report was or is a part of the budget. Further, it is this report that sec. 13.48, Stats., refers to when it restricts the use of building trust funds to projects "in the long-range building program."
The State Building Commission must and does have the authority to pick and choose between the projects listed in the report under the category of auxiliary projects. The fact the appropriations to cover such recommended projects were not sufficient to cover all projects makes this exercise of discretion apparent. However, to substitute a new project for the recommended projects as contained in the report is an entirely different exercise of discretion.
Section 20.924 (1) (a) and (b), Stats., provides:
"(1) In supervising and authorizing the implementation of the state building program under the appropriation authority of s. 20.710, the building commission: *Page 338 
"(a) Shall authorize the design and construction of any building, structure or facility costing in excess of $250,000 regardless of funding source, only if that project is enumerated in the authorized state building program.
"(b) Shall authorize the acquisition of land, or the repair, remodeling or improvement to any building, structure or facility costing in excess of $250,000, regardless of funding source, only if that project is enumerated in the authorized state building program."
These provisions allow the authorization of projects costing $250,000 or more if specifically enumerated or provided for in the State Building Program. These statutory provisions do not say the Building Commission may authorize the construction of projects costing less than $250,000 that do no appear in the program. This is a possible interpretation, but it is an interpretation based on what the law does not say rather than on what it does say.[6] This possible interpretation cannot counter the fact that the State Building Program in part consists of the report, which report enumerates the auxiliary projects. Nor can this possible interpretation counter the fact that building trust funds may only be used under sec. 13.48 (3), Stats., for projects in the "long-range building program" or, in other words, for projects enumerated in the report, and of recent date, in the budget.
There is no appropriation by law to construct projects not found in the report, except through the appropriation of federal aid, grants and gifts as hereinafter discussed. There being no appropriation by law to cover the cost of constructing a project not found in the building program, any such expenditure would, in my opinion, violate Art. VIII sec. 2, Wis. Const. *Page 339 
There may be situations where funds are received by the state and appropriated to particular state agencies for building projects not found in the building program. In this regard, I have in mind federal funds which are specifically appropriated by secs. 20.710 (2) (u), and 13.48 (2) (b) 1, Stats. Appropriations carry them the implied authority to perform the act for which the funds were authorized. A contrary opinion would ignore the specific appropriation of sec. 20.710 (2) (u), Stats., as well as the provisions of sec. 13.48 (2) (b) 1, Stats.
It is my opinion that, where such non-state funds are received and appropriated to the building program, they may be used to construct facilities not in the building program, provided such facilities do not exceed $250,000.
It must be kept in mind the appropriations to the Building Trust Fund for the 1969-1971 biennium and for the 1971-1973 biennium were biennial appropriations and unencumbered balances revert to the general fund pursuant to the provisions of sec.20.001 (3) (b), Stats. Accordingly, unencumbered balances in the Building Trust Fund from the 1969-1971 biennium are unavailable at this time.
With this general background, I will attempt to advise as to the propriety of particular projects now before the Building Commission.
PROJECT 1241, OREGON SCHOOL FOR GIRLS,
RE-ROOF TWO AREAS SCHOOL BUILDING
($13,150)
Re-roofing areas of the school building, in my opinion, falls within the definition of "ordinary maintenance" and the building trust funds are, under sec. 13.48 (1), Stats., unavailable for such type of work. This project does not require Building Commission approval under sec. 13.48 (10), Stats., and should be paid out of the department operating budget.
PROJECT 1242, WISCONSIN STATE
PRISON — WAUPUN REMODELING
($72,200) *Page 340 
Chapter 125, Laws of 1971, appropriated $2,156,000 for auxiliary projects under sec. 518 (1) (e) of the budget. The 1971-1973 State Building Program as reported to the legislature contained the following statement:
"This funding pattern provides for greater emphasis on patient and inmate needs, covers sufficient capital maintenance and allows for emergencies and unforeseen developments to be satisfied at the discretion of the agency and the Building Commission.* * *"
As stated previously, the appropriation for auxiliary projects apparently exceeds by $85,000 the estimated cost of the enumerated auxiliary projects.[7] I have no way of knowing whether this was by design or inadvertence, but the fact remains that surplus funds appear to be on hand. This apparent fact, coupled with the above-quoted language, leads me to conclude that this project may be authorized if it fits that portion of the quoted language "for emergencies and unforeseen developments."
DEPARTMENT OF MILITARY AFFAIRS
A. Project 1331, National Guard Armory at Monroe
($275,000, State Share $72,000)
The total authorization for this agency in ch. 125, Laws of 1971, is $175,000, specifically earmarked for an addition to the Adjutant General's office. The session law corresponds to the legislative report in that the report also reflects this $175,000 item for the Adjutant General's office addition. The legislative report also requested $80,000 for an armory at Antigo and $80,000 for an armory at Monroe. Although these armories were not specifically mentioned in ch. 125, subsection (7) of section 518, ch. 125, Laws of 1971, does provide as follows:
"Two armories may be constructed if subsequent review by the building commission finds them to be essential." *Page 341 
Assuming the language of subsection (7) as quoted above satisfies the provisions of sec. 20.924 (1) (a), Stats., requiring enumeration of all projects over $250,000, we nevertheless have the additional problem of determining where the state's share or $72,000 is to come from. Article VIII, sec. 2, Wis. Const., provides in part:
"No money may be paid out of the treasury except in pursuance of an appropriation by law.* * *"
As previously mentioned, the addition to the Adjutant General's office is specifically enumerated in the report as well as in the session laws of 1971, even though its projected cost is less than $250,000. Accordingly, it would be inappropriate to use these funds for this or these projects except to the limited extent permissible under sec. 20.924 (1) (d), Stats. These projects may be constructed and financed from building trust funds only if it is possible to change the project programs and budgets of the armory or armories and the office addition sufficiently to construct both projects, and at the same time satisfy the requirement of "limited changes" as set forth in sec. 20.924 (1) (d), Stats. The Building Commission is not required to approve either the armories or the office addition. However, if the Commission does approve the construction of an armory, it must be financed from those funds earmarked for the office addition by "limited" shifting of funds from the office addition to the armory. Even if the Commission decides not to authorize the construction of the office building, this does not make $72,000 available for the armory at Monroe for this, in my opinion, would be more than a limited change. It would not be within the language of sec. 20.924 (1) (d), Stats., to defer the office addition and use $72,000 of funds earmarked for that project for the Monroe armory. It is my opinion that, when a particular project is deferred or disapproved by the Commission, the funds earmarked for that project may not be used in total or even to a large extent for another project or projects. This type of fund shifting would clearly violate the "limited changes" concept or intent of sec. 20.924 (1) (d), Stats.
 B. Projects 1341 to 1345 and 1347, Constituting Various Armory Additions, etc., to be Totally Financed from Federal Funds. *Page 342 
None of these projects are provided for in the State Building Program.
Section 13.48 (2) (b) 1, Stats., provides in part:
"* * * The commission shall have all the powers necessary to carry out its duties and may accept all donations, gifts and bequests made to the state for public building purposes, including any grants made by the federal government, and apply the same in accordance with the terms of the grant or the wishes of the donors. * * *"
Section 20.710 (2) (u), Stats., provides in part:
"(u) Aids for buildings. Unless otherwise provided by law all moneys received from the federal government or from other sources for the construction, remodeling, repairing, equipment or otherwise improving any of the state's buildings or institutions shall be paid into the state building trust fund and are appropriated therefrom to the proper department for the purposes for which received, as certified by the governor. The state of Wisconsin hereby assents to the provisions of any act of congress making such funds available to this state for such purposes. * * *"
As these projects are under $250,000 and as federal grants are appropriated to such projects under the language quoted above, and sec. 20.465 (1) (m) and (u), Stats., they may be approved by the State Building Commission.
As explained earlier in this opinion, the specific appropriation of funds carries with it the authority to construct the projects.
I realize this conclusion results in expenditures exceeding total funds authorized in the state building program for this agency and, therefore, possibly contrary to the prohibition contained in sec. 20.924 (1) (d), Stats. There is question as to whether subsection (d) applies to a situation, such as the case at hand, where no change between projects in a program is involved. On the other hand, subsection (d), it can be argued, is applicable, for subsection (3) of sec. 20.924, Stats., specifically provides that subsection (1) of this same section should apply to program revenues, i.e., federal funds. On balance, it seems reasonable to assume that the legislature did not intend to foreclose the use of federal funds on projects costing less than $250,000. A contrary *Page 343 
interpretation would vitiate the appropriation statute and violate the rule that statutes in pari materia should be construed so that they will all be operative. McLoughlin v.Malnar (1942), 237 Wis. 492.
 C. Project 1348, Federal and State Financing (State's Share $12,500, State Operating Budget Program Revenues)
Although this project exceeds $15,000 and accordingly needs Building Commission approval under sec. 13.48 (10), Stats., building trust funds are not involved. This project is to be financed from the maintenance account of the agency (sec. 20.465
(1) (b), Stats.) and does not constitute a project within the state building program. Accordingly, it is my opinion that the Building Commission may approve this project.
 D. Project 2131, University of Wisconsin-Madison
This request concerns an anticipated project of some $700,000. It appears the project is to be built in two stages with phase one consisting of constructing a $242,000 facility. Phase two would consist of constructing the balance at cost of approximately $458,000. Phase two is contingent upon subsequent legislative authority.
In addressing myself to this project, I assume that phase one is a complete and distinct project which does not depend on or commit the state to the second phase of the project. If this assumption is not correct and phase one and two are, in fact, dependent and constitute one program, then under no circumstances may the Building Commission approve phase one. It would not only be an act of bad faith to proceed in this matter if the projects really constitute a single program, but it would be illegal.
Just what is meant by the language contained in the Wisconsin State Building Commission Agenda of July 18, 1972, which describes the funding of this project as: "The remaining $200,000 has previously been authorized from building trust fund prior funding balances.", is not clear. However, it is my understanding *Page 344 
that it is the intent to fund this project under unused minor project authority as set forth in ch. 154, Laws of 1969, or under auxiliary project authority as contained in ch. 125, Laws of 1971.
The unused authority under the category, Minor Projects, University of Wisconsin-System, 1969-1971, has lapsed. This appropriation was a biannual appropriation and lapsed pursuant to the provision of sec. 20.001 (3) (b), Stats. Accordingly, no reliance may be had on the 1969-1971 unused or unencumbered funding authority. If this project is to be funded, it must be funded from the appropriation contained in sec. 518 (b) of ch. 125, Laws of 1971, entitled System-Auxiliary Projects.
I find no reference to this project in the state building program, report or budget, and, accordingly, it is my opinion that the project may not be authorized.
In regard to the possible planning of phase two of this project, I can only conclude such an expenditure would violate the provisions of secs. 13.48 (3) and 13.48 (5), Stats., as set forth below:
"* * * At such times as the commission directs, the governor shall authorize releases from this fund to become available for projects in the long-range building program, and he shall direct the department of administration to allocate from this fund such amounts as are approved for these projects. * * *
"* * * The department of administration shall assist the commission in the performance of its duties. The department of administration shall, when requested by the commission, make or cause to be made such studies, preliminary plans and specifications and cost estimates with respect to any proposed project as are necessary to permit the commission to consider intelligently the approval or disapproval of the project and the appropriation of funds. The costs of such studies shall be charged against the building trust fund."
I realize that sec. 518 (1) (j) of the budget appropriated $2,000,000 for advance planning. What the term "advance planning" includes is difficult to determine. Surely it would encompass planning needs for future legislative action. However, *Page 345 
to be consistent with the laws pertaining to the state building program, it cannot be used for the actual final design of a facility that has not been approved by the legislature.
Additionally, you have asked:
"What do you advise we do about projects approved and under construction with signed contracts which never appeared on any list?"
I cannot advise on this matter without knowing exactly what the projects were, what funds were used and on what theory approval was given. If you will advise me as to the particular facts involved in each instance, I will provide what assistance and advice I can.
RWW:CAB
[1] Webster's Seventh New Collegiate Dictionary.
[2] Bogan v. Postlewait (1970), 265 N.E.2d 195.
[3] Schmidt v. Morival Farms (1951), 240 S.W.2d 952.
[4] Chapter 154, Laws of 1969 and ch. 125, Laws of 1971.
[5] The exception referred to is apparently an unearmarked surplus of $18,000 to the Department of Health and Social Services.
[6] There may be many explanations for this prohibition, one being that the Building Commission cannot use gift and grant funds to construct an unauthorized facility exceeding $250,000 which the state would then become obligated to maintain.
[7] See N. 5.